**David STITH, Plaintiff,**

v.

**Richard B. BARNWELL, Broughton W. Tanner, Betty Thurman, and James Simmons, Defendants.**

**No. C–76–75–G.**

United States District Court,
M. D. North Carolina,
Greensboro Division.

March 31, 1978.

James R. Turner and James H. Burnley, IV, Greensboro, N. C., for plaintiff.

Raymond C. Buday, Jr., Atlanta, Ga. and Benjamin H. White, Jr., Asst. U. S. Atty., Greensboro, N. C., for defendants.

## MEMORANDUM OPINION

GORDON, Chief Judge.

This matter is before the Court on motions filed by both sides of this dispute. First, the defendants have filed a motion to dismiss, or in the alternative, for summary judgment. Second, the plaintiff asks that a party defendant be added. Third, the defendants have filed a motion to dismiss for mootness and for summary judgment on the issue of punitive damages. Fourth, the plaintiff seeks to amend his complaint in order to claim additional actual damages and attorney's fees and to delete his prayer for injunctive relief. Because of the disposition herein of the defendants' first motion, it will be unnecessary to consider the other motions presented to the Court.

In 1975, the plaintiff, David W. Stith, was the director of housing and management for the area office of the United States Department of Housing and Urban Development for the State of North Carolina. Stith was administratively removed from his post in early 1976 by his superiors at HUD. The plaintiff filed suit in this Court alleging that 42 U.S.C. §§ 1985 and 1988 had been violated by the defendants' actions in having him removed. The defendants were, at the times material to this case, employees of HUD. As a result of administrative appeals instituted by the plaintiff, he has been ordered reinstated retroactively to March 26, 1977, the effective date of his removal.

In their initial motion, the defendants contend this action should be dismissed for five reasons: (1) For failure to state a claim upon which relief can be granted in that the complaint failed to state a violation of either 42 U.S.C. § 1985 or 42 U.S.C. § 1988; (2) That § 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, provides the exclusive remedy in this case; (3) That the plaintiff has failed to join an indispensable party, the Department of Housing and Urban Development, or its Secretary; (4) That

the plaintiff has failed to exhaust his administrative remedies; and (5) That the doctrine of absolute immunity bars any relief against these defendants. The defendants ask, alternatively, for summary judgment on the fifth ground.

■ As to the defendants' contention that the plaintiff has failed to state a claim upon which relief can be granted, the defendants correctly assert that 42 U.S.C. § 1988 does not create an independent cause of action for violation of federal civil rights. See *Moor v. County of Alameda*, 411 U.S. 693, 702, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). The defendants' contention that the plaintiff has not stated a claim for relief under § 1985 presents a much more difficult question and one that is complicated by the dearth of decisions under § 1985.

Section 1985 was, until recently, a little used nineteenth century civil rights statute composed of three distinct subsections. Section 1985(1) creates civil liability for participating in a conspiracy to prevent a federal officer from performing his duties. Section 1985(2) creates civil liability for participating in a conspiracy to obstruct justice. Section 1985(3) creates civil liability for participating in a conspiracy to deny persons the equal protection of the law or equal privileges or immunities under the law.

The plaintiff's allegations, which the Court must accept for purposes of this motion, are that in trying to increase minority participation and equal racial treatment in HUD programs in North Carolina, the plaintiff upset established relationships between the defendant Barnwell and existing white contractors and program sponsors. The plaintiff further claims that because of these actions by the plaintiff, the defendants formed a conspiracy to remove him from his position.

### Section 1985's Applicability to Federal Defendants

The defendants first contend that these allegations fail to state a claim upon which relief can be granted because § 1985 does not apply to defendants who were acting as federal employees. While § 1985(2) is clearly inapplicable to the facts of this case, there is some possibility that § 1985(1) or § 1985(3) would apply in this case. Adequate consideration of the defendants' contention requires that these subsections of § 1985 be closely examined.

■ Sections 1985(1) and 1985(3) have somewhat different origins which are important in interpreting the applicability of the subsections to federal defendants. Both subsections date from the Act of April 20, 1871, ch. 22, 17 Stat. 13 (often referred to as the Ku Klux Klan Act). Although § 1985 had often been viewed as being grounded in the Fourteenth Amendment, the Supreme Court in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), decided that the constitutional base of § 1985(3) lay in the Thirteenth Amendment. Consequently, § 1985(3) as well as other statutes that have their base in the Thirteenth Amendment (§§ 1981 and 1982) do not require state action at least as applied in claims involving racial discrimination. *Griffin v. Breckenridge, supra*; *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Section 1985(1), although first enacted in 1871, is derived from a virtually identical criminal statute which dates from the Act of July 31, 1861, ch. 33, 12 Stat. 284 (currently codified as 18 U.S.C. § 372). Since § 1985(1) is derived from a statute enacted prior to the adoption of either the Thirteenth or Fourteenth Amendment, its constitutional roots are in neither Reconstruction amendment but lie instead in the older provisions of the Constitution. *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329 (7th Cir. 1977).

■ There are some decisions which hold that § 1985(3) does not apply where defendants were acting as federal employees. See *Bethea v. Reid*, 445 F.2d 1163 (3d Cir. 1971); *Williams v. Halperin*, 360 F.Supp. 554 (S.D. N.Y.1973); and *Moore v. Schlesinger*, 384 F.Supp. 163 (D.Colo.1974). These decisions were apparently premised on the notion that this subsection is grounded in the Fourteenth Amendment and that action un-

der color of *state* law is essential for liability to attach under the subsection. Federal employees would usually be acting under color of federal, and not state, law. The text of § 1985(3), however, does not indicate that defendant must be acting under color of any law, state or federal. As previously mentioned, the Supreme Court, in *Griffin*, rejected the requirement of state action, at least where racial discrimination is involved. In addition, the Supreme Court, in *Griffin*, said that § 1985(3) was aimed at all conspiracies which deprive persons of certain federally protected rights. Given the Supreme Court's decision in *Griffin* and the plain language of § 1985(3), the Court is of the opinion that the subsection would apply to federal defendants who participate in a conspiracy that would otherwise be proscribed by the subsection. See *Alvarez v. Wilson*, 431 F.Supp. 136 (N.D.Ill.1977).

Only three reported decisions have any direct bearing on the question of whether § 1985(1) applies where the defendants were acting as federal officials: *Alvarez v. Wilson, supra* ; *Perry v. Golub*, 400 F.Supp. 409 (N.D.Ala.1975); and *Moore v. Schlesinger, supra*. In *Alvarez*, the Court held, *inter alia*, that federal officers may be sued under § 1985(1) if the complaint alleges racial discrimination. In *Alvarez*, the plaintiff, a black Puerto-Rican enlisted man sued several naval officers alleging that the defendants conspired to remove him from his post because of the plaintiff's vocal and persistent attempts to improve race relations in the Navy. In *Perry*, the Court, without discussing whether federal officials may be sued under § 1985(1), issued a preliminary injunction against officials of the Equal Employment Opportunities Commission after finding that the plaintiff had been removed from his position with the EEOC because he had reported to the U. S. Attorney irregularities in the handling of cases by his superior. In *Moore*, the Court held that federal officers could not be sued under § 1985(1). In *Moore*, the plaintiff, a U. S. Air Force captain, alleged that the defendants, his Air Force superiors, had removed him from his position as an instructor at the Air Force Academy in retaliation for letters he had written to members of Congress.

Neither the *Alvarez* nor the *Moore* decision can be viewed as persuasive precedent because of the assumptions both courts made about the constitutional underpinnings of § 1985(1) and (3). The *Alvarez* decision was based on the court's conclusion that § 1985(1), like § 1985(3), is grounded in the Thirteenth Amendment. 431 F.Supp. at 142. In *Moore*, the court concluded that § 1985(1) did not apply to federal defendants by simply citing *Bethea v. Reid, supra*, and *Williams v. Halperin, supra*. Both *Bethea* and *Williams* involved only § 1985(3) and the courts there based their decisions on the view that color of state law is essential for liability to attach under that subsection. As previously stated, § 1985(1)'s precursor, 18 U.S.C. § 372, antedates the adoption of the Thirteenth and Fourteenth Amendments. Thus, it is inappropriate to look to either of these amendments in determining the applicability of § 1985(1) to federal defendants.

In determining the proper scope of § 1985(1), the Court must instead look to the plain language of the statute and to its roots in the older provisions of the Constitution. The Supreme Court's approach in interpreting the scope of other civil rights statutes has been "to accord [them] a sweep as broad as [their] language." *Griffin v. Breckenridge*, 403 U.S. at 97, 91 S.Ct. at 1796; *United States v. Price*, 383 U.S. 787, 801, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). The Court notes that there is nothing in the language of § 1985(1) to preclude its application to defendants who were acting as federal employees, given an otherwise appropriate set of circumstances. Furthermore, it would appear that the most likely source of constitutional authority for § 1985(1) would be the Necessary and Proper Clause, U.S.Const., Art. I, § 8. See *Stern v. United States Gypsum, Inc., supra* at 1338–39. There would appear to be no constitutional infirmity with construing § 1985(1) to include defendants who were acting as federal employees. The Court is of the opinion that § 1985(1) would apply

where defendants who were acting as federal employees were participating in a conspiracy otherwise proscribed by the subsection.

The defendants, however, contend that the plaintiff's claim constitutes a charge of employment discrimination and, as such, does not fall within the prohibition of § 1985(1). The Court reserves judgment on whether a claim of employment discrimination could constitute a violation of § 1985(1). However, as discussed below, the Court believes that the plaintiff's claim is one of racial discrimination in federal employment, and thus finds that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, provides the exclusive remedy for the plaintiff in this case.

### Title VII as the Plaintiff's Exclusive Remedy

Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on race, color, religion, sex, or national origin. As originally enacted, Title VII did not protect federal employees. Concern over whether federal employees had adequate legal remedies for employment discrimination led to the enactment of § 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, as a part of the Equal Employment Opportunity Act of 1972. Section 2000e–16(a) provides that all personnel actions affecting federal employees and applicants for federal employment "shall be made free from any discrimination based on race, color, religion, sex, or national origin." Sections 2000e–16(b) and (c) establish complementary administrative and judicial enforcement mechanisms. In *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court held that § 2000e–16 provides an exclusive, pre-emptive administrative and judicial scheme for the redress of certain types of federal employment discrimination.

If the plaintiff's allegations, once proven, would constitute a violation of § 2000e–16, the plaintiff's claim is not cognizable under § 1985(1) or (3). As previously stated, the plaintiff alleges that the defendants formed a conspiracy to remove him from his job because they disagreed with his attempts to increase minority participation and equal racial treatment in HUD programs in North Carolina. The plaintiff, who is black, makes no allegation that the defendants acted because of the plaintiff's race. Therefore, the narrow question which faces this Court is whether a federal employee suffers discrimination "based on race" when he is discharged from his job because of his advocacy, as a part of his work, of improved treatment of racial minorities. The Court has found no authority directly on point.

There are, however, decisions in somewhat analogous situations which suggest an affirmative answer to this question. In *Sperling v. United States*, 515 F.2d 465 (3d Cir. 1975), the Court of Appeals for the Third Circuit held that a white federal employee stated a claim under 42 U.S.C. § 2000e–16 where he alleged that he had been denied a promotion because he had represented a black fellow employee in a series of discrimination grievances. In addition, under a provision of Title VII applicable to non-federal employees,[1] there is case authority that nonminority employees state a Title VII claim where they allege their employers acted against them because of their association with minorities. *Holiday v. Belle's Restaurant*, 409 F.Supp. 904 (W.D.Pa.1976); *Whitney v. Greater New York Corporation of Seventh-Day Adventists*, 401 F.Supp. 1363 (S.D.N.Y.1975). But cf. *Ripp v. Dobbs Houses, Inc.*, 366 F.Supp. 205 (N.D.Ala.1973).

■ These decisions are in accord with the Court's own view that a federal employ-

---

1. The language of Title VII which defines what are unlawful employment practices in the private sector is more restrictive than the language of § 2000e–16(a). Section 2000e–2 forbids discrimination "because of such individual's race, color, religion, sex or national origin", while § 2000e–16 forbids discrimination "based on race, color, religion, sex, or national origin." While this difference is probably immaterial, the Court notes that the "sweep" of § 2000e–16 may be a bit broader than that of § 2000e–2.

ee who has been discharged from his job because of his advocacy of improved treatment of racial minorities has suffered racial discrimination. Title VII should be broadly construed in order to effectuate the purpose of Congress to outlaw discrimination. *Davis v. Valley Distributing Co.*, 522 F.2d 827 (9th Cir. 1975); *Culpepper v. Reynolds Metals Co.*, 421 F.2d 888 (5th Cir. 1970). Construing § 2000e–16 to include cases where a federal employee has been discharged from his job because of his advocacy, as a part of his work, of improved treatment of racial minorities would be in accord with this policy.

For the foregoing reasons, the Court concludes that the plaintiff's allegations state a claim that is cognizable under § 2000e–16. Under the *Brown* decision, § 2000e–16 is the plaintiff's exclusive remedy, and, therefore, the defendant's motion to dismiss will be granted.