**Paul LAWRENCE, Appellant,**

v.

**Vernon D. ACREE, et al.**

No. 79–2532.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 2, 1981.

Decided Sept. 28, 1981.

**62.** *Hartford-Empire Co. v. United States, supra* note 47, 323 U.S. at 410, 65 S.Ct. at 385, 89 L.Ed. at 360.

Keith Poole, Atlanta, Ga., for appellant, Robert M. Tobias, Gen. Counsel, and William E. Persina, Associate Gen. Counsel, National Treasury Employees Union, Washington, D. C., were on the brief, for appellant.

John Aisenbrey, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, John R. Fisher and R. Craig Lawrence, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellees.

Before MacKINNON and WALD, Circuit Judges, and GREENE,* United States District Judge for the District of Columbia.

Opinion PER CURIAM.

Opinion concurring in the result filed by Circuit Judge WALD.

PER CURIAM:

Paul Lawrence, a former Regional Commissioner of the United States Customs Service, appeals the dismissal of his 42

* Sitting by designation pursuant to 28 U.S.C. 292(a).

U.S.C. § 1985(1) complaint, which was brought against four defendants—the Commissioner of the Customs Service, the Deputy Commissioner, an assistant commissioner for internal affairs, and a former regional director for internal affairs, naming these persons in their individual and official capacities. The complaint sought damages resulting from the defendants' alleged unlawful conspiracy to

> cause Plaintiff to retire from, resign, or otherwise relinquish his position as Regional Commissioner, so that Defendants, in particular Defendant [Commissioner] Acree, could fill said position with an individual of their own choosing. [Joint Appendix (App.) at 7]

The alleged conspiracy did not succeed in its object of forcing Lawrence to resign, but he alleges it did cause him "humiliation, contempt, mental anguish, and emotional and physical distress." App. at 10. The district court dismissed the complaint on the ground that the only overt act occurring within the statutory limitation period, an

allegedly adverse performance evaluation, was cognizable only under the performance Rating Act. We affirm the dismissal of the complaint, but on the basis of the defendants' official immunity.

## I.  BACKGROUND

The complaint alleges that a conspiracy to oust Lawrence from his position as Regional Commissioner began with the appointment of Commissioner Acree in 1973 and lasted until Lawrence's voluntary retirement in December 1976. According to the complaint and supplemental exhibits, the defendants committed a number of overt acts in furtherance of the alleged conspiracy. These allegations are set forth in the margin.[1]

Lawrence resigned in December 1976 but the present complaint was not filed until September 22, 1978. The district court held that the overt acts Lawrence alleged could state a claim upon which relief could be granted under 42 U.S.C. § 1985(1),[2] and that the controlling limitation period was three

---

1.  In May 1973, defendant William A. Magee, Assistant Commissioner of Internal Affairs, told Lawrence that Acree wanted his resignation. Lawrence was told that if he refused to resign he would be subjected to continual audits and frequent and inconvenient work assignments but that if he resigned as Acree desired he would receive a "within grade" salary increase that had been previously withheld.

2. In December 1973 defendant Magee again contacted Lawrence, telling him Acree was disappointed Lawrence had not resigned and reiterating Acree's desire that Lawrence retire.

3. At various times in 1974, defendants Acree, Magee, and Regional Director of Internal Affairs James O'Brien subjected Lawrence to audits and investigations designed to discover information that could be used to coerce Lawrence into resigning. The investigations included surveillance of Lawrence's residence and searches of his desk and office.

4. In December 1974 Acree met with Lawrence and emphasized the advantages of retiring before January 1, 1975.

5. In January 1975 defendant Deputy Commissioner Glenn R. Dickerson presented Lawrence with a letter proposing his removal from his position, designed to coerce Lawrence's resignation. The letter subsequently was withdrawn.

6. In August 1976 defendant Dickerson mailed to Lawrence an evaluation by Dickerson

and Acree of Lawrence's job performance. Part II of the evaluation gave Lawrence an overall rating of "satisfactory," but Part I conveyed the opinion that Lawrence performed his duties in a below average manner in 12 of the 21 categories listed. Lawrence claims that this act, too, was aimed at coercing his resignation.

2.  The subsection provides:
Preventing officer from performing duties
    If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties; ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators. (RS § 1980)
42 U.S.C. § 1985(1).

years.[3] The court held, however, that only damage resulting from specific actions is compensable under 42 U.S.C. § 1985(1); "the conspiracy itself is not actionable." App. at 74. The court then noted that the only overt act falling within three years of suit was the performance evaluation. The court concluded:

> Even if defendants' actions could otherwise give rise to a claim under Section 1985(1), the Court declines to supplement the express remedy supplied by the Performance Rating Act, 5 U.S.C. §§ 4301 *et seq.* for correction of allegedly inaccurate or unfair personnel evaluations. Accordingly, this action must be dismissed for failure to state a claim upon which relief can be granted.

App. at 75. The court found it unnecessary to consider defendants' defense of official immunity, although both sides had briefed the issue. *Id.*

## II. ANALYSIS

Although we conclude, with the district court, that Lawrence's action should be dismissed, we are reluctant to affirm the dismissal on the basis of the "exclusive remedy" rationale stated by the court, or to adopt some of defendants' alternative rationales. We are persuaded, however, by defendants' argument that the only act for which they may be responsible in damages is their preparation and distribution of the performance evaluation, and that as to this act the defendants are absolutely immune from liability.

### A. *Applicability of § 1985*

The district court relied on *Stern v. United States Gypsum,* 547 F.2d 1329 (7th Cir.), cert. denied, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977), to reason that section 1985(1) may be extended to actions by a federal employee against his supervisors. *Accord, Stith v. Barnwell,* 447 F.Supp. 970 (M.D.N.C.1978) (dictum). Defendants question that proposition, appellees' brief at 12 n.8, and we find it unnecessary either to affirm or reject in light of our disposition of the case. We shall assume *arguendo,* however, that under the fact alleged a section 1985(1) action would ordinarily lie.

### B. *The Performance Rating as Providing the Exclusive Remedy*

■ Lawrence argues that dismissal of his section 1985(1) complaint cannot be based on the exclusivity of a Performance Rating Act remedy, which permitted agency employees to appeal performance ratings (including ratings of "satisfactory") and authorizes the reviewing board to "make such change as it considers proper." 5 U.S.C. § 4305(c), (d) (1976).[4] Lawrence notes that

---

3. The district court rejected defendants' argument that the applicable statutory limitation period was the one year provided for defamation, 12 D.C.Code § 301(4), and held the most appropriate limitation period was the three year period prescribed by § 301(8). The relevant sections of the statute provide:

> Except as otherwise specifically provided by law, actions for the following purposes may not be brought after the expiration of the period specified below from the time the right to maintain the action accrues:
>
> *       *       *       *       *    ·  *
>
> (4) for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment—1 year;
>
> *       *       *       *       *       *
>
> (8) for which a limitation is not otherwise specifically prescribed—3 years.
>
> 12 D.C.Code § 301.

4. 5 U.S.C. § 4305(c), (d) (1976) provide:

> (c) In addition to the review under subsection (a) of this section, an employee with a current performance rating of less than satisfactory, on written appeal to the chairman of the appropriate board of review established under subsection (b) of this section, is entitled to a hearing and decision on the merits of the appealed rating. If an employee with a current performance rating of satisfactory has not requested and obtained review of the rating under subsection (a) of this section, he is entitled, on written appeal to the chairman of the appropriate board of review established under subsection (b) of this section, to a hearing and decision on the merits of the appealed rating.
>
> (d) At the hearing the appellant, or his designated representative, and representatives of the agency are entitled to submit pertinent information orally or in writing, and to hear to examine, and reply to, information submitted by others. After the hearing, the board of review shall confirm the appealed rating or make such change as it considers proper.

section 1985(1) promotes different policies, involves different elements of proof, and provides for judicial trial and a distinct form of relief—damages—than does the remedy under the Performance Act. Defendants do not argue to the contrary. We agree with Lawrence that Congress did not pre-empt a section 1985(1) action (assuming one might lie in these circumstances) with the limited remedy it provides under the Performance Rating Act. A performance evaluation may be one element of an actionable conspiracy, but that does not mean that the Performance Rating Act provides the exclusive remedy for damages resulting from the evaluation, even if the statute of limitation limits the conspiracy action's damage claim to the evaluation itself. See generally *Fitzgerald v. Seamans*, 553 F.2d 220, 226–27 (D.C.Cir.1977) (discharged federal employee's civil service and tort-civil rights remedies were independent); *Churchwell v. United States*, 545 F.2d 59, 61 (8th Cir. 1976) (plaintiff not limited to Privacy Act claim when pursuing damages under Fifth Amendment).

Whether the availability of the remedies under the Performance Rating Act grafts an exhaustion requirement onto any section 1985(1) action based on a performance evaluation is another question.[5] Defendants do not rely on any failure to exhaust, however, and Lawrence arguably fulfilled the purpose of an exhaustion requirement when he protested the below average marks he received in Part I of his evaluation, for defendant Dickerson soon thereafter declared

Part I of the evaluation invalid. See App. at 78. Lawrence thus achieved through his informal grievance what he might have achieved through a formal appeal under the Performance Rating Act.

### C. Defendants' "Actionable Tort" Theory and the Statute of Limitations

While not relying on the district court's exclusive remedy rationale, defendants interpret the court's opinion to mean that Lawrence's action was "time-barred because the sole overt act alleged to have occurred within the limitations period, the satisfactory evaluation, could not support an action for civil conspiracy." Appellee's Brief at 7. Defendants explain that "[t]o include such an evaluation as an operative part of the alleged conspiracy, it is necessary to find that the performance rating was a tortious act which injured appellant." *Id.* at 10. Because Lawrence's "satisfactory" job performance rating was not libellous, defendants continue, "the evaluation cannot be an operative part of a civil conspiracy because it is not a tortious act." *Id.* at 13.[6]

We think that in this respect defendants misapprehend the law of civil conspiracy. Lawrence has alleged that defendants gave him a substandard performance evaluation in furtherance of a conspiracy proscribed by section 1985(1), "and it is well settled that acts that are in themselves legal lose that character when they become constituent elements of an unlawful

**5.** Defendants also argue the district court erred in rejecting their argument that a one year statute of limitation applied. See note 2 *supra*. Perhaps this argument would have merit if the substandard performance evaluation—and other acts possibly defamatory in their nature—accounted for all of the conspiratorial acts alleged. Here, however, the other acts appear to sound in such disparate torts as invasion of privacy, deceit, trespass, and tortious interference with contract, none of which, it appears, is subject to a one year statute of limitations. We question the wisdom of applying possibly a different statute of limitation to each component of a continuing conspiracy and think the district court was correct in treating the alleged conspiracy as giving rise to a single cause of action subject to a single statute of limitation.

Given the varying characteristics of the overt acts that this alleged conspiracy comprised, this particular section 1985(1) action was an action "for which a limitation is not otherwise specifically prescribed." 12 D.C.Code § 301(8).

**6.** The Performance Rating provisions were superseded by the Civil Service Reform Act of 1978, Pub.L.No.95–454, 92 Stat. 1131 (1978). Under the present statute, it appears that an employee displeased with his performance appraisals may seek review of his appraisal only if the agency proposes his removal or reduction in grade based on unacceptable performance. See 5 U.S.C. § 4303. It was the 1976 codification, however, that was in effect at all times relevant to this proceeding.

scheme," *Continental Co. v. Union Carbide Co.*, 370 U.S. 690, 707, 82 S.Ct. 1404, 1414, 8 L.Ed.2d 777 (1962). It is sufficient that Lawrence alleged the evaluation caused him injury; Lawrence need not allege the evaluation was tortious in itself. We decline to deprive section 1985 and other civil conspiracy statutes of significant meaning by requiring that each overt act in furtherance of the conspiracy be independently actionable.

██ We agree with defendants' understanding, however, that (absent special circumstances not present here, such as fraudulent concealment of the conspiracy) the statute of limitations in a civil damages action for conspiracy runs separately from each overt act that is alleged to cause damage to the plaintiff.[7] The three year statute of limitations applicable here thus confines our focus, for purposes of considering damages, to the August 1976 performance evaluation.[8] This determination alone justifies dismissal of the complaint as to defendants Magee and O'Brien, but not as to Dickerson and Acree who are alleged to have participated in the 1976 performance evaluation. There is no allegation that Magee or O'Brien furthered the conspiracy against Lawrence at any time since 1974. See *Gual Morales v. Hernandez Vega*, 579 F.2d 677, 681 (1st Cir. 1978) ("plaintiff must allege ... that each defendant to be charged committed an action constituting a civil rights violation in furtherance of the conspiracy within the limitation period").

D. *Official Immunity of Executive Officials Reporting Performance Evaluations of Employees*

Since we are not satisfied that the district court can be affirmed on the theory of an exclusive Performance Rating Act reme-

dy or a theory of "no actionable tort," we now consider the official immunity defense which was raised but which the district court found unnecessary to address. The issue is whether federal common law confers on defendants Acree and Dickerson an absolute immunity from suit for allegedly subjecting Lawrence for purely personal reasons to a performance evaluation aimed at causing him to remove himself from office. In the absence of such immunity we must remand for further proceedings.

*(1) Barr v. Matteo*

Defendants rely here, as they did below, on the holding of *Barr v. Matteo*, 360 U.S. 54, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) that a false and damaging publication within the outer perimeter of a federal official's scope of duty was an exercise of discretion which was not itself actionable and would not become so even if it be assumed that it was issued maliciously.

██ A threshold issue presented, then, is whether defendants, in preparing Lawrence's job evaluation, were acting within the scope of their duty. Lawrence contends that "[d]efendants' only discretion in a case such as this is to counsel and evaluate an employee on performance problems with the intent of improving his performance; and to take in good faith such adverse actions as will promote the efficiency of the service." Appellant's reply brief at 7. Lawrence proceeds from that premise to argue that defendants are fully subject to suit, notwithstanding any immunity they might otherwise have, because he alleges they exceeded the bounds of their authority when the performance rating was issued with the improper motive of coercing his resignation. The flaw in Lawrence's premise—a too constricted view of an offi-

---

7. *Kadar Corp. v. Milbury*, 549 F.2d 230, 234–35 (1st Cir. 1977) (overt acts committed outside statutory limitation period are not actionable even if they are part of a continuing conspiracy that included overt acts within limitation period); *Mizell v. North Broward Hospital District*, 427 F.2d 468, 475 (5th Cir. 1970) (civil conspiracy claimant may recover only as to overt acts that fall within the limitation period).

8. Lawrence, we note, makes no express argument to the contrary, concentrating in his briefs on the performance evaluation to the exclusion of the other overt acts alleged in the complaint.

cial's scope of authority for immunity purposes—was laid bare in *Barr*:

> it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.

360 U.S. at 572, 79 S.Ct. at 1340 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1932)). That is, the defendants contend, so long as their actions were, on their face, performed within the scope of the defendants' duties, the fact that they were alleged to have been performed with an unlawful intent does not deprive them of a claim to immunity. The statute in effect when defendants acted required agencies to use performance ratings to evaluate employee work performance, 5 U.S.C. § 4302 (1976),[9] and the responsibility for complying with this Act rested upon the defendants. We therefore conclude that defendants were acting within the scope of their duties and are therefore entitled to some form of official immunity.

### (2) Absolute or Qualified Immunity

A second and more substantial point of contention concerning defendants' official immunity is whether it is to be absolute or qualified. Absolute immunity defeats a damage suit once it appears the defendant's actions were within his line of duty, while qualified immunity defeats the suit only if the defendant shows his actions were taken in good faith, i.e., with a reasonable belief that they were lawful. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13, 96 S.Ct. 984, 989 n.13, 47 L.Ed.2d 128 (1976). Although the act complained of here falls well within a broad reading of the holding in *Barr v. Matteo, supra*, Lawrence argues that *Barr's* absolute immunity rule should not apply because (1) he is relying on an express statutory remedy (§ 1985(1)), and not simply on a common law tort, as did the plaintiff in *Barr*; and (2) he also allegedly has a constitutional claim, to which he contends defendants can have only a qualified immunity, under *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

We address the second contention first.

#### (a)

Lawrence's constitutional claim is that defendants' performance evaluation deprived him of property or liberty without due process of law. Appellant's reply brief at 13 n.6.[10] The complaint reveals no basis for this claim. The only property interest present in this context stemmed from an expectation of continued federal employment absent just cause for adverse action (Lawrence being in the competitive service). Yet Lawrence concedes he quit *voluntarily.* There is thus no nexus between the act complained of and any deprivation of a property interest. The only liberty interest present in this context was that in averting stigmatizing governmental action in the course of termination of employment. Here, with Part I of Lawrence's evaluation declared invalid and with only the overall "satisfactory" rating of Part II remaining intact it can be doubted that Lawrence has incurred any stigma at all. Even more fundamental, perhaps, is the point that

---

**9.** 5 U.S.C. § 4302 (1976) provided:

> For the purpose of recognizing the merits of employees and their contributions to efficiency and economy in the Federal service, each agency shall establish and use one or more performance-rating plans for evaluating the work performance of its employees.

**10.** Lawrence points out that the Supreme Court did not recognize an implied cause of action under the Fifth Amendment until one month after dismissal of his complaint by the trial court. See *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). Even had such a cause of action been asserted, however, the facts alleged in the complaint plainly do not support it, as we explain in text.

whatever stigma Lawrence did incur did not occur in connection with termination of employment. As is the case with Lawrence's property interest, his voluntary retirement breaks any nexus between the offending performance evaluation and damage to a constitutionally protected interest.

#### (b)

This brings us to Lawrence's emphasis on the statutory nature of his claim. Defendants argue that they were entitled to repulse any nonconstitutional claim by invoking the absolute immunity announced in *Barr v. Matteo*, while Lawrence argues that *Barr* is distinguishable because it involved only one form of nonconstitutional claim—a common law tort action. Lawrence stresses that *Barr* did not involve what is present here—a congressionally created cause of action.

#### (3) *Butz v. Economou*

■ Both sides rely on *Butz v. Economou, supra.* In *Butz* the Supreme Court declined to extend *Barr's* absolute immunity rule to cover federal officials sued in their personal capacities for constitutional torts committed within the scope of their duties. The Court held that such officials were generally entitled only to qualified immunity. 438 U.S. at 507, 98 S.Ct. at 2911. The Court's language may be read to limit this departure from *Barr* to claims based on the Constitution, *see e.g., id.* at 495 n.22, 507, 98 S.Ct. at 2905 n.22, 2911, but the Court also said:

> It is apparent . . . that a quite different question would have presented [in *Barr*] had the officer ignored an express *statutory or* constitutional limitation on his authority.

*Id.* at 489, 98 S.Ct. at 2902 (emphasis added). Assuming, without deciding, that Lawrence is able to distinguish *Barr v. Matteo* simply because his claims rests on a

federal statutory tort (as opposed to a state common law tort),[11] we nevertheless conclude that defendants under the circumstances here alleged are entitled to absolute immunity.

■ We reach that conclusion under the analysis provided in *Butz, supra,* in which the Court stated that, a general rule of qualified immunity was subject to those exceptional situations where it is demonstrated that absolute immunity is, "essential to the conduct of public business." 438 U.S. at 507, 98 S.Ct. at 2911. The Court went on to hold absolutely immune those defendants in the Executive Branch—the Chief Hearing Examiner, Judicial Officer and prosecuting attorney, *id.,* at 508–517, 98 S.Ct. at 2911–2916—who were performing prosecutorial and adjudicative functions within the agency in recognition of the rule that "some [executive] officials [with] special functions require a full exemption from liability. (Citing cases)." *Id.,* at 508, 98 S.Ct. at 2911. Before applying the *Butz* test, we reject at the outset any notion that section 1985(1) precludes *any* official immunity defense. Section 1985, like 42 U.S.C. § 1983, is a statute that "creates a species of tort liability that on its face admits of no immunities." *Imbler v. Pachtman, supra,* 424 U.S. at 417, 96 S.Ct. at 988. Yet we do not think that section 1985, any more than section 1983, was intended to abrogate the federal common law of official immunity. See generally *Owen v. City of Independence,* 445 U.S. 622, 637, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673, *rehearing denied,* 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980). We think that here, as in a section 1983 case or a federal constitutional tort case, we should start with the assumption that defendants are entitled to at least qualified immunity for acts performed within the scope of their duties and then determine whether a broader immunity is appropriate by balancing the unavoidable harm to the

11. Dicta in at least two courts of appeals decisions rendered since *Butz* have indicated that qualified rather than absolute official immunity should be the rule, even in the absence of a constitutional claim, if the plaintiff is relying on a *federal* cause of action. *Hampton v. Hanra-han,* 600 F.2d 600, 632, 634 (7th Cir. 1979), *modified on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Forsyth v. Kleindienst,* 599 F.2d 1203, 1215 n.16 (3d Cir. 1979), *petition for cert. filed,* 48 U.S.L.W. 3481 (U.S. Jan.18, 1980) (No. 79–1120).

person left unable to sue against the harm to effective government that the threat of suit would pose. *See generally Butz v. Economou, supra,* 438 U.S. at 505–17, 98 S.Ct. at 2910–16.

To determine whether absolute immunity exists in any given situation we must focus on the particular conduct and circumstances that gave rise to the claim of liability. *See Tigue v. Swaim,* 585 F.2d 909, 914 (8th Cir. 1978). Here Lawrence's sole claim surviving the statute of limitations is his claim for damages resulting from defendants' performance evaluation. The strong governmental interest in having a frank and honest assessment of federal employee work performance is absolutely essential to the proper rendering of federal services to our citizens. A supervisor's candid evaluation promotes efficient government by enabling an agency to identify and reward truly outstanding performance and to identify and correct, and on occasion dispense with, performance that is unsatisfactory. The judgment might be distorted if their immunity from damages arising from that decision was less than complete. *Cf.* 438 U.S. at 515, 98 S.Ct. at 2915. Requiring a supervisor to demonstrate his good faith whenever he is personally sued in damages for a displeasing performance appraisal would greatly discourage all but the most resolute supervisors from hazarding a conclusion that their subordinates' work was substandard.

The significance of this interest in insulating the exercise of supervisory judgment from non-job related concerns would be significantly less if the absence of a damage suit left an employee in Lawrence's position without any recourse against malicious and erroneous evaluation. But Lawrence had alternative remedies and he exercised them—as did *Economou,* 438 U.S. 516, 98 S.Ct. at 2915. His informal grievance was followed by a withdrawal of the most offensive part of his evaluation, and Performance Rating Act provisions then in effect permitted him to appeal even his overall rating of "satisfactory." See p. 1322 *supra.*

## CONCLUSION

In light of these considerations Lawrence's individual interest in a damage remedy for what is at most a nonconstitutional tort [12] is not compelling. Since we believe it absolutely essential to the proper functioning of the government in the interests of the public that departmental officials must be able to evaluate the performance of employees free from intimidation or harassment, we conclude that under the particular circumstances alleged the defendants have absolute immunity from suit. The dismissal by the district court is therefore affirmed.

*Judgment accordingly.*

WALD, Circuit Judge, concurring:

I agree that the complaint in this case should be dismissed, but I do not agree that the proper ground for dismissal is absolute immunity for executive officials whenever they evaluate the performance of their subordinates. We need not, and should not, address the immunity question in this case, as plaintiff has not stated a valid cause of action under 42 U.S.C. § 1985(1) [1] against his superiors, who he asserts entered into a conspiracy to remove him from his position in order to replace him with a person of their own choice.

---

12. This court's en banc decision in *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Inst.,* 566 F.2d 289, 294 (1977) distinguished "the interest in personal reputation involved in *Barr*" from "right[s] so precious that a remedy in damages has been inferred from the Constitution." *Butz* also relied on the constitutional-nonconstitutional distinction, and has been read to have established a dichotomy between constitutional actions, and "common law" actions, with the latter term being understood to encompass statutory law. Note, *The*

*Supreme Court, 1977 Term,* 92 Harv.L.Rev. 57, 271 & n.43 (1978). Although we have assumed arguendo that Lawrence may distinguish *Barr v. Matteo* by the fact that his tort action is based in federal law, its nonconstitutional nature is still relevant in our balance of the competing interests. *See Expeditions Unlimited, supra.*

1. The text of § 1985(1) is found in the Maj. Op. at 1321 n.2.

**1328**

In essence, plaintiff alleged that his superiors made baseless charges of poor work performance against him and conspired in other ways to effect his premature retirement. *See* Complaint for Damages, Plaintiff's Appendix at 4–11. There was no allegation that the conspiracy was based upon racial animus, or that it was intended to prevent plaintiff from properly performing his government duties, or that it was designed to injure him on account of the lawful discharge of his duties. On the contrary, the only plausible interpretation that can be drawn from plaintiff's complaint is that defendants simply disliked him, or considered his job performance substandard, and therefore wanted him replaced. Plaintiff nevertheless asserts that § 1985(1) applies, and the panel opinion assumes *arguendo* that his position is correct. That assumption—necessary for the panel opinion to reach the immunity question—is unjustified. The controlling question, unaddressed by either the district court or the majority here,[2] is whether plaintiff has presented a valid cause of action under § 1985(1).

The language of § 1985(1) nowhere suggests that it applies to a federal employee seeking damages from his supervisors who attempt to remove him simply because they dislike him or find his on-the-job performance substandard. Section 1985 is a systemic device, designed to protect against class-based discrimination,[3] or conspiracies seeking to impede the operations of government by interfering with an official in the discharge of his official duties.[4] It is not concerned with the very different, but ever-present problem of assuring that federal supervisors evaluate their subordinates objectively and fairly. Congress has provided an elaborate array of provisions designed to protect federal employees asserting individual interests only. *See, e.g.,* 5 U.S.C. § 4301, *et seq.* (remedies for employees who complain of unfair performance evaluations); *see generally,* Civil Service Reform Act of 1978, P.L. 95–454, 92 Stat. 1131. It would be inconsistent with the carefully crafted Congressional scheme in this area to imply a new cause of action under an old statute, which for the first time would expose federal supervisors to personal liability for their decisions regarding subordinates which are based upon mere personal antipathy or incorrect work evaluations.

I recognize that § 1985(1) should not be so restricted that it applies only in those precise situations contemplated in 1871 by its framers. In *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977) (hereinafter *Stern*), the court extensively reviewed the legislative history of this provision and noted that the Ku Klux Klan Act of 1871—of which § 1985(1) was a part—was enacted by "a Congress acutely aware of the massive and frequently violent resistance in the southern states to federal Reconstruction after the Civil War." *Id.* at 1334. But the *Stern* court's analysis of the various federal civil

---

2. *See Lawrence v. Acree,* Civ. Action No. 78–1794 (D.D.C. March 12, 1979), App. at 28; *Lawrence v. Acree,* Civ. Action No. 78–1794 (D.D.C. April 30, 1979), App. at 74; Maj. Op. at 1322.

3. *See, e.g., Arnold v. Tiffany,* 487 F.2d 216 (9th Cir. 1973), *cert. denied,* 415 U.S. 984, 94 S.Ct. 1578, 39 L.Ed.2d 881 (1974); *Denman v. Leedy,* 479 F.2d 1097 (6th Cir. 1973); *Hughes v. Ranger Fuel Corp.,* 467 F.2d 6 (4th Cir. 1972).

4. In *Perry v. Golub,* 400 F.Supp. 409 (N.D.Ala. 1975) (hereinafter *Perry*), an employee of the Equal Employment Opportunity Commission (EEOC) sought injunctive relief against his superiors, who he alleged were unfairly attempting to reassign him to another position. Plaintiff alleged that his reassignment was motivated by his "whistleblowing" activities—reporting irregularities in the handling of EEOC cases to the United States Treasury. The district court found that plaintiff had established a reputation as one of the most outstanding officials in the EEOC, *id.* at 418, and that defendants' actions were arbitrary and an abuse of administrative discretion. *Id.* at 417. Finding that it was "in the public interest that [plaintiff] should not be penalized for having had the courage and conscience to speak out," *id.* at 419, the court issued a preliminary injunction against the reassignment. Although defendants were not accused of harboring any racial or group animus, the district court opined that their actions in all likelihood violated 42 U.S.C. § 1985(1). *Id.* at 417.

rights statutes persuaded it that § 1985(1) should not be limited solely to cases where racial or group animus was present. It applied § 1985(1) to a case brought by an Internal Revenue Service agent against individuals outside of the government who conspired to injure him on account of the lawful performance of his official duties. Applying § 1985(1) to such a case is, of course, consistent with the terms and legislative intent of the section, which is directed against efforts to impede governmental operations by interfering with officials in the discharge of their duties. *Stern, supra* at 1334–35.

This analysis does not exempt federal officials from liability as defendants in actions brought by their subordinates under § 1985(1). *See, Stith v. Barnwell*, 447 F.Supp. 970 (M.D.N.C.1978) (dictum that federal officers may be defendants in § 1985(1) action); *Alverez v. Wilson*, 431 F.Supp. 136, 142 (M.D.Ill.1977) ("the text, context, and history of the statute, though not totally free from doubt, lead to the conclusion that federal officials may be sued under § 1985(1) ... if the complaint alleges racial discrimination"). While there is no basis to exclude federal officials from liability under § 1985(1) for conspiracies involving racial animus, or some other kind of invidious discrimination akin to racial bias, such as discrimination based upon religion or national origin, or for conspiracies to interfere with the operations of government by impeding another official in the discharge of his duties, no court has ever extended § 1985(1) so far as to provide a cause of action for every federal employee dissatisfied with his evaluation and convinced that his supervisors are trying unfairly to get rid of him.[5] Absent a clearer indication of Congressional intent to provide a cause of action directly against federal supervisors under such circumstances, I would not stretch an 1871 Ku Klux Klan statute to find such intent.[6]

5. *Cf. Perry, supra.*

6. This does not preclude the possibility that an aggrieved federal employee may seek relief under state or District of Columbia law for the tortious acts of his supervisors. The possibility

I find the majority opinion dangerously precipitous in holding that all federal officials performing evaluations must be absolutely immune from suit by their subordinates because such immunity is allegedly essential to the proper functioning of the government. Maj.Op. at 15. This court has been given no factual or testimonial basis concerning why government supervisors of all kinds require absolute immunity for their evaluations in all circumstances; the trial judge did not even attempt to resolve this difficult question. Before finding that such immunity is "essential to the conduct of public business," *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978), this court should have a more complete record regarding the effects of such a rule and the necessity for it in these and other circumstances. In my judgment this barren record represents a completely inappropriate vehicle for announcing a major precedent concerning immunity for federal officials.

In addition, holding that absolute immunity is required in this case seems to me inherently inconsistent with the notion, accepted *arguendo* by the majority, that Congress provided this plaintiff with a § 1985(1) action in the first place. The majority cannot logically assume that a section 1985(1) action would ordinarily lie,[7] and at the same time find an implicit absolute immunity from such action. To assume the existence of a § 1985(1) remedy in this case is to deny the existence of absolute immunity. As Judge Leventhal has written, "it is patently inconsistent with [the] federal [statute] to apply a federal common law rule of absolute immunity for executive officials subjected to suit by the statute." *Expeditions Unlimited v. Smithsonian Institution*, 566 F.2d 289, 293 (D.C.Cir.1977) (en banc) (discussing why absolute immunity

of recovering in such an action, of course, is contingent upon the extent of immunity to which the supervisors are entitled, and we need not make that determination here.

7. Maj.Op. at 1322.

cannot apply to a § 1983 remedy against state executive officials). If the majority is convinced that federal supervisors should not be burdened with personal liability for their performance evaluations, then its primary task should be to discern whether Congress actually provided for such liability under § 1985(1) in the first place, rather than assuming it did so and plunging forward to negate that presumed intention by establishing absolute immunity.

For these reasons, although I concur in the dismissal of the complaint, I cannot do so based upon the rationale set forth in the majority opinion.