Do Sun PARK, M.D., Plaintiff,

v.

Joan T. ZATCHUK, M.D., et al., Defendants.

Civ. A. No. 83–3412.

United States District Court, District of Columbia.

March 28, 1985.

Gregory A. Cotter, Washington, D.C., for plaintiff.

Richard A. Stanley, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

Plaintiff was a medical doctor in active duty service with the United States Army from 1978 until 1983, and served as a resident in the Otolaryngology Clinic at Walter Reed Army Medical Center ("Walter Reed") from July 1981 until October 1982. In March 1983, after reviewing plaintiff's official Army file, Walter Reed precluded

plaintiff from practicing medicine at Walter Reed. Likewise, after reviewing plaintiff's official Army file, the United States Army Medical Department Personnel Support Agency discharged plaintiff from the military service, effective October 5, 1983, based on its finding that the plaintiff had failed to meet the minimal requirements for a medical doctor.

The defendants were also medical doctors in active duty service with the United States Army during the period of plaintiff's residency at Walter Reed, and served as plaintiff's supervisors in the Otolaryngology clinic.[1] On numerous occasions, defendant Zatchuk criticized plaintiff's performance in the residency program by making statements to other medical personnel at Walter Reed, and by placing memoranda in plaintiff's personnel file. Complaint at ¶¶ 5–9, 12–15; Defendant's Statement of Material Facts as to Which There is No Genuine Dispute (hereinafter Defendant's Undisputed Facts) at ¶ 6. Likewise, on March 17, 1982 defendant Davis wrote a letter to defendant Zatchuk unfavorably evaluating plaintiff's medical performance. Complaint at ¶ 10; Defendant's Undisputed Facts at ¶ 7. Finally, in November, 1982 all three defendants prepared and signed an Officer Evaluation Report concerning plaintiff's performance in the residency program for the period from May 9 to October 16, 1982, which criticized plaintiff's professional competence and conduct.

Plaintiff initiated this action against all of the defendants in their individual capacity alleging that the defendants libeled and slandered him and invaded his privacy in rendering the oral and written evaluations outlined above critical of his performance as a medical doctor. This case is presently before the Court on defendant's motion to dismiss, or in the alternative for summary judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a grant of summary judgment is appropriate where there are no disputed issues of material fact and the moving party is entitled to summary judgment as a matter of law. Upon consideration of defendant's motion, plaintiff's opposition, and the undisputed facts of this case, this Court concludes that the defendants are absolutely immune from the common law torts alleged by the plaintiff.[2] Accordingly, summary judgment for the defendants must be granted.[3]

### Discussion

In *Barr v. Mateo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), the Supreme Court held that a federal official exercising discretion within the "outer perimeter" of his authority enjoys the privilege of absolute immunity from common law torts. *Id.* at 575, 79 S.Ct. at 1341.[4] *See also Butz v. Economou,* 438 U.S. 478, 488, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (false and dam-

---

1. Defendant Zatchuk served as Chief of the Otolaryngology Clinic during the period of plaintiff's residency at Walter Reed. Defendants Davis and Hall were staff physicians.

2. Defendants also argued that they were shielded in this action by the doctrine of intra-military immunity where an individual is barred from recovering for injuries "incident to military service." *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed.2d 152 (1950). In light of this Court's holding that the doctrine of absolute immunity is dispositive of plaintiff's claims, defendant's arguments under the doctrine of intra-military immunity need not be addressed.

3. The defendants earlier filed a motion to dismiss, or alternatively for summary judgment, as their initial response to plaintiff's complaint,

prior to conducting any discovery. By Order dated June 18, 1984, this Court denied that motion without prejudice and permitted plaintiff limited discovery on the issue of defendants' immunity. Thereafter, the plaintiff deposed Daniel B. Kimball, M.D., Chief of Professional Services at Walter Reed. Because this Court has reviewed Dr. Kimball's deposition in considering defendants' renewed motion, that motion shall be treated under F.R.C.P. 56 as one for summary judgment, in accordance with F.R.C.P. 12(b)(6).

4. In *Barr* the Court held that the Acting Director of the Office of Rent Stabilization was not liable for defamation as the result of issuing a press release indicating that the respondents, employees of the agency, would be suspended for allegedly improper activities. *Barr,* 360 U.S. at 574, 79 S.Ct. at 1341.

aging publication issued within scope of official's authority not actionable despite allegation of malice).

In resisting application of the *Barr* doctrine to this action, the plaintiff essentially raises two points: (1) that the defendants were not acting within the scope of their authority in making the critical evaluations of the plaintiff, and (2) that the defendants' activity is identical to discretion exercised by non-governmental medical officials and therefore is not entitled to the privilege of absolute immunity.

■ With respect to his argument that the written and oral evaluations of plaintiff's performance were not the result of the defendants' proper exercise of their authority, plaintiff essentially argues that more was required of the defendants than critical conclusions concerning the plaintiff. Instead, plaintiff argues that the defendants' authority to supervise plaintiff in the residency program required the defendants to engage in meaningful communication and counseling with the plaintiff to endeavor to correct perceived deficiencies, and that plaintiff never received such feedback and direction from the plaintiff. Finally, plaintiff asserts that written evaluations of his performance were not required to be placed in his personnel folder until the conclusion of his training, with the exception of his annual Officer Evaluation Report, unless to support a recommendation of adverse action.

This Court cannot accept plaintiff's argument, however, that the defendants' obligation to engage in constructive evaluations and communications with the plaintiff rendered their critical evaluations improper. Clearly, it was the responsibility of the defendants to monitor the performance of the plaintiff as well as all participants in the residency program. Deposition of Daniel B. Kimball, M.D. (hereinafter Kimball Deposition) at 42. Nothing *prohibited* the defendants from fulfilling that responsibili-

ty by maintaining written records. Kimball Deposition at 36–37. Moreover, the issue in this litigation is not whether the plaintiff's removal from the Walter Reed program, and ultimately from the Army, was unwarranted in that the plaintiff was not given an opportunity to identify and correct his problems, but rather whether defendants had the authority to evaluate plaintiff's performance. Indeed this Court must agree with defendants' observation that on this point the plaintiff has confused content with context. Evaluations of the plaintiff were clearly within the scope of defendants' authority, indeed were mandated, and nothing prescribed the manner in which that authority was to be exercised.

■ Finally, plaintiff argues that because the function of evaluating medical residents is identical whether the residency program is in a federal institution or a private medical facility, the discretion exercised by the defendants here is not the type of "governmental policy" discretion that the absolute immunity privilege of *Barr v. Mateo, supra,* was meant to protect. Instead, the plaintiff argues that under *Barr* absolute immunity was meant to apply only to federal officials performing functions for which there is no comparable organization in the private sector.

This Court, however, cannot so broadly construe the exceptions that have been recognized to the absolute immunity doctrine. The consideration is not whether comparable functions exist in the governmental and private sector, but whether the purposes of the absolute immunity doctrine, namely, to allow the unfettered operation of government, will be fostered by application of the privilege.[5] For example, in *Henderson v. Bluemink,* 511 F.2d 399 (D.C. Cir.1974), the plaintiff alleged that an Army doctor negligently diagnosed and treated his illness. *Id.* at 402. The Court rejected the Army doctor's claim of absolute immunity, finding that the discretion exercised by the

---

**5.** In recognizing the privilege of absolute immunity in *Barr,* the Court stated "[O]fficials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties." *Barr,* 360 U.S. at 571, 79 S.Ct. at 1339.

**210**

defendant was purely medical rather than governmental. *Id.* at 403. In doing so, the Court noted:

> For those acts which the doctors performed in an administrative capacity—and thus heavily fraught with discretion—we agree that immunity should attach. We must part company with the court, however, where acts of a strictly medical nature are concerned.

*Id.* at 403 n. 24.

Therefore, virtually all discretionary administrative decisions by federal officials, regardless of whether they occur within a uniquely governmental area such as the legislative branch, or a federal institution with parallels in the private sector, such as a military hospital, are entitled to the privilege of unfettered decisionmaking. This Circuit has recognized this to be especially true with respect to the evaluation of federal employees:

> The strong governmental interest in having a frank and honest assessment of federal employee work performance is absolutely essential to the proper rendering of federal services to our citizens. A supervisor's candid evaluation promotes efficient government by enabling an agency to identify and reward truly outstanding performance and to identify and correct, and on occasion dispense with, performance that is unsatisfactory. The judgment might be distorted if their immunity from damages arising from that decision was less than complete.

*Lawrence v. Acree,* 665 F.2d 1319, 1327 (D.C. Cir.1981) (citation omitted).

Moreover, even if there was merit to plaintiff's argument that all governmental functions with direct parallels in the private sector are not absolutely immune from liability for common law torts, it would not be persuasive here. Although all medical students participating in residency programs surely undergo evaluations by their supervisors which may impact on their futures as medical professionals, the evaluations performed by the defendants here had a military purpose distinct from their medical purpose. All of the critiques of the plaintiff played an integral role in the Officer Evaluation Report used to review *all* servicemen on an annual basis. Kimball Deposition at 37–38. All of the reports at issue, therefore, served the uniquely governmental purpose of documenting the plaintiff's performance as an aid to later decisionmaking concerning his military career, whether they would have been decisions concerning assignments, training, promotion or discharge. *Id.* at 37–42. Consequently, the discretion exercised by the defendants was instrumental in ensuring the competency of members of this nation's armed forces.

Therefore, for the reasons set forth above, defendants' motion for summary judgment must be granted. An order consistent with the terms of this opinion shall be issued.