**Donald ROCHON, et al., Plaintiffs,**

**v.**

**Thomas DILLON, et al., Defendants.**

**No. 87 C 9574.**

United States District Court, N.D. Illinois, E.D.

May 8, 1989.

David Kairys, Adam Thurschwell, Kairys & Rudovsky, Philadelphia, Pa., Jeffrey L. Taren, Kinoy, Taren, Geraghty & Potter, Chicago, Ill., Susan Gzesh, Chicago, Ill., Allan R. Stein, Camden, N.J., for plaintiffs.

Dan K. Webb, Bernard Bobbes, Winston & Strawn, Chicago, Ill., for Thomas Dillon.

John L. Gubbins, John L. Gubbins & Assoc., W. Mary Stowell, Chicago, Ill., for Gary Miller.

Scott R. Lassar, Delora Riggs–Bonamici, Marshall L. Blankenship, Keck, Mahin & Cate, Chicago, Ill., for Kenneth Veach.

Brian P. Gettings, Cohen, Gettings, Alper & Dunham, Arlington, Va., Vincent J. Connelly, Mayer, Brown & Platt, Chicago, Ill., for David Hempen, Terry Keiser and William Lueckenhoff.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Federal Bureau of Investigation agent Donald Rochon ("Rochon") and his wife Susan ("Susan") have sued FBI agents Gary Miller ("Miller"), Kenneth Veach, Terry Keiser ("Keiser"), David Hempen ("Hempen") and William Lueckenhoff ("Lueckenhoff") (collectively "Chicago Defendants") and Thomas Dillon ("Dillon"), all in their individual capacities, for damages arising out of a series of incidents occurring while Rochon was an FBI agent in Omaha and Chicago. Plaintiffs' Second Amended Complaint ("Complaint") charges those incidents involved violations of:

1. 42 U.S.C. § 1981[1] by systematic racial harassment, discrimination and retaliation against plaintiffs (Count II);

---

1. Further references to the civil rights statutes in Title 42 of the United States Code will take

2. Section 1985 by a conspiracy (Count I) to:

    (a) prevent Rochon from performing his duties and induce him to leave his assigned work location (Section 1985(1));

    (b) hinder and obstruct justice with intent to deprive plaintiffs of equal protection of the laws (Section 1985(2)); and

    (c) deprive plaintiffs of their rights and privileges on the basis of race (Section 1985(3));

3. plaintiffs' rights of privacy, personal integrity, liberty, equal protection of the laws, freedom of speech and freedom of association—all under color of federal law—in contravention of the First, Fourth and Fifth Amendments (the "*Bivens* claims") (Count III); and

4. state common law via intentional infliction of emotional distress, invasion of privacy, gross negligence and negligence (Count IV).

Defendants now move under Fed.R. Civ.P. ("Rules") 12(b)(6) and 8(a) to dismiss the entire Complaint except for Rochon's individual state law claims for invasion of privacy and intentional infliction of emotional distress. For the reasons stated in this memorandum opinion and order, the motion is granted in part and denied in part.

### Facts [2]

Rochon began working as an FBI special agent in November 1981 and was assigned to the Omaha branch in January 1983. Rochon is black and Susan, whom he married in 1978, is white.

All defendants are also FBI special agents. Dillon, the first to come into contact with Rochon, was assigned to Omaha when Rochon arrived there. Then Dillon was transferred to the Chicago office in December 1983.

Beginning immediately upon Rochon's arrival in Omaha and continuing through the time Rochon and Dillon were both there, Rochon was subjected to repeated incidents of racial harassment. It would prolong this opinion unduly (and unnecessarily) to repeat the Complaint's detailed recital of those numerous and appalling incidents (¶¶ 15–22). They included harassing phone calls at home and work; pictures of beaten black men placed in Rochon's mail slot; a series of objects derogatory to blacks; numerous false stories playing on black stereotypes; and the maintenance of a racially hostile atmosphere through remarks ranging from ethnic slurs to Klan sympathy. Though the authors of many of these incidents are unknown, Dillon was involved in many of them. In one instance Dillon and another agent engaged in a "fart contest" at a party in front of (and directed at) Susan (¶ 15(g)).

Rochon reported all the incidents to his supervisor, but no investigation was ever undertaken. When Rochon became due for a transfer (in accordance with standard FBI practice), he requested a California location. Although white agents being transferred from Omaha were sent to their requested areas, Rochon was not. Instead he was transferred in June 1984 to Chicago, where Dillon was already in place. That transfer was effected despite Rochon's requests and pleas that he feared further harassment in Chicago. When Rochon met with FBI officials to discuss the discriminatory transfer, they initiated an investigation against *him* for failing to report a housing discrimination incident that had occurred when Rochons had moved to Omaha a year earlier. Eventually a censure of Rochon was recommended and is-

---

the form "Section—," referring to the Title 42 numbering.

**2.** Familiar Rule 12(b)(6) principles require this Court to accept as true all of the Complaint's well-pleaded factual allegations, drawing all reasonable inferences in plaintiffs' favor (*Marmon Group, Inc. v. Rexnord, Inc.*, 822 F.2d 31, 34 (7th Cir.1987) (per curiam)). On that score plain-

tiffs' attempts to incorporate, as part of their submissions, supplemental materials such as newspaper articles and the transcript of a "Nightline" TV program are entirely inappropriate. Those materials have played no part in this decision. All Complaint allegations will be cited simply "¶—," while its Exhibits will be cited "Ex.—."

sued on that ground, while no action was taken on his discrimination claim.

Upon Rochon's move to Chicago, it soon became apparent that it was business as usual. Dillon and the Chicago Defendants (all special agents in Chicago during Rochon's tenure there) embarked on a harassment campaign that had been mapped out before Rochon's arrival and put the Omaha harassment to shame.

Defendants' Chicago campaign utilized a similar modus operandi: harassing phone calls at home and work, use of the mails and circulating false stories. But that was only the beginning. Rochon's mail included death threats, death and dismemberment policies taken out in his name by forging his signature, unrequested materials sent him because of forged orders in his name, bills for unrequested materials and other ominous materials. Rochon was billed for an ad in the *Chicago Tribune* (one he never placed) that referred to a confidential EEOC proceeding he had initiated.

All those incidents were the work of the defendants or such nonparty co-conspirators as Rochon's supervisors, Special Agent in Charge Edward Hegarty ("Hegarty") and Assistant Special Agents in Charge Michael Wilson and Milt Ahlerich. Actions by the supervisors included repeated failures to investigate the harassment incidents and the seizure of a tape of a letter to the Department of Justice ("DOJ") dictated by Rochon asking for help in investigating the incidents.

Rochon's stint in Chicago drew to a close after Hegarty sent a memorandum to FBI headquarters about Rochon, in which Hegarty identified both Miller's confession to many of the incidents and Rochon's "vivid attitudinal problem" and concluded that Rochon should be transferred. As a result of the memorandum Miller was given a two-week suspension and Rochon was mandatorily and involuntarily transferred to Philadelphia in June 1986.[3]

*Prior Actions Involving
EEOC and DOJ*

Rochon has filed four formal complaints with EEOC charging FBI harassment and discrimination. Rochon's first complaint dealt with the Omaha incidents up to and including his transfer to Chicago. On that score both EEOC and DOJ ultimately found Rochon had been harassed and discriminatorily transferred and granted a "full range of remedies" (¶ 12(a) and Exs. A and B).

Rochon's second and third complaints concern the Chicago incidents and are being held in abeyance pending a criminal investigation being conducted by DOJ's Civil Rights Division under the direction of Assistant Attorney General William Bradford Reynolds (¶ 12(b) and Exs. C and D). That investigation has proceeded slowly with the intent of hindering the processing of his claims (¶¶ 80–87), apparently as part of a conspiracy (¶ 84).

Rochon's final complaint involves a discriminatory denial of housing expenses after plaintiffs left Chicago and relocated in Philadelphia (¶ 12(c)). No action has as yet been taken in that respect.

*Bivens Claims*

■ In part plaintiffs assert violations of their First, Fourth and Fifth Amendment rights—what has become known as a *Bivens* action after *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed. 2d 619 (1971). To succeed in recovering damages on that theory, plaintiffs must show defendants acted "under color of federal law" (see, e.g., *Reuber v. United States,* 750 F.2d 1039, 1054 (D.C.Cir.1984)).

■ *Screws v. United States,* 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1945) provided the seminal definition of the "color of law" concept:

It is clear that under "color" of law means under "pretense" of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded.

---

**3.** Rochon alleges further discriminatory incidents after his transfer to Philadelphia. Those, however, do not involve any defendants named here.

Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it.

That element is not present if the acts are not related to the performance of authorized duties: the actor's conduct must be related to the authority conferred upon him or her by the government (see *Murphy v. Chicago Transit Authority*, 638 F.Supp. 464, 467 (N.D. Ill.1986)).[4]

■ It is obvious from a mere recital of defendants' actions that, reprehensible though they are, they were not done under color or pretense of federal law. Their phone calls, threatening letters, false stories and other harassing actions did not in any sense require federal authority for their accomplishment. To be sure, the fact that defendants shared the same federal workplace as Rochon[5] enabled or facilitated the commission of those acts—but it is merely the *shared* nature of the employment that did so, not the *federal* nature of the employment or even the employment itself. There was nothing governmental about the activities, nor was there anything about the governmental status of defendants that enabled the activities to take place. Exactly the same things could have occurred equally well had the FBI offices been those of a private employer.[6]

■ Only one area of activity might escape that analysis: the actions of Rochon's supervisors, sought to be ascribed to defendants through the conspiracy. It will be recalled the supervisors (not themselves defendants here) are accused of tolerating the discriminatory atmosphere, refusing to investigate the incidents and punishing Rochon for reporting those incidents. Those actions (or failures to act) by the supervisors *are* under pretense of federal law, for to the extent they involve Rochon's employment relationship with the federal government the supervisors clearly act as agents of the federal government. But that very fact, which might potentially keep Rochon in court to that limited extent, takes him out of court because of Title VII preemption.

*Brown v. General Services Administration* ["*GSA*"], 425 U.S. 820, 829, 96 S.Ct. 1961, 1966, 48 L.Ed.2d 402 (1976) teaches that Section 717 of the Civil Rights Act of 1964 (part of Title VII, 42 U.S.C. §§ 2000e–16):

> create[d] an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination.

That lesson in turn teaches it is improper to create *Bivens* remedies in such preempted areas (*Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)), a lesson repeated and applied in a different context just last Term in *Schweiker v. Chilicky*, — U.S. —, 108 S.Ct. 2460, 2467–68, 101 L.Ed.2d 370 (1988). It flatly prohibits any cause of action, except one under Title VII, based on federal employment discrimination.

■ It is true that Title VII does not preclude separate remedies for unconstitutional action other than the areas of discrimination barred by that statute (*White v. GSA*, 652 F.2d 913, 917 (9th Cir.1981)). And Rochon argues that cases such as *Stewart v. Thomas*, 538 F.Supp. 891 (D.D.C.1982) support the proposition that Title VII does not preempt claims distinct from employment discrimination, even where

---

**4.** Conduct involving the abuse of such authority, of course, remains under color of law. That was the basic teaching of *Screws*, and it remains the fount of most Section 1983 actions and their federal counterparts, the *Bivens* claims.

**5.** In that respect it is only Rochon and not his wife who can even attempt to assert a *Bivens* claim. According to the Complaint the only direct contact between defendants and Susan occurred at a private party or at the Rochon home, where no federal authority was asserted. That same analysis applies to bar Susan's Sec-

tion 1981 claim as well as any claim under Section 1985(1) or (2).

**6.** Rochon points to the fact that FBI agents are authorized to make phone calls, place materials on bulletin boards, follow individuals and spy on them—all activities alleged to be part of the harassment conspiracy. But the key is not whether federal law "authorized" the actions in that sense, but rather whether the actions were done under pretense of federal law or, by contrast, "in the ambit of their personal pursuits" (as *Screws* put it). Plainly the latter is the case.

such claims rest on facts identical to those underlying the Title VII claim.

But that really misses the critical distinction. *Stewart* upheld an employee's claims against supervisors as individuals, charging common law torts of assault, battery and intentional infliction of emotional distress—torts that stemmed from private misconduct and not misconduct qua supervisors. That is equally true of the other cases cited at P. Mem. 29–30. However, Rochon can identify no case that holds or even suggests that a *Bivens* claim grounded in supervisory actions taken under color of federal law could survive Title VII preemption—and there is a good reason for that failure. Any such federal claim arises *by definition* in the employment context.[7] And that brings the claim head on into the *Brown*-mandated preemption of Title VII.

Rochon's purported *Bivens* claims are therefore caught in a double bind. To the extent defendants' actions are not under color of federal law, they are not actionable, while to the extent they are under color of such law, they are preempted.

Rochon complains that he should not be "penalized" in that manner, for a private citizen subjected to the same harassment would have a *Bivens* claim. But that contention is analytically unsound:

1. Any such FBI harassment of a private citizen would not be in the workplace and would presumably have to be conduct under color of law, so as not to face the same problem Rochon does.

2. To the extent the supervisors' activity represented action under color of

federal law, a private citizen would not of course have a Title VII claim.

### Section 1981 Claims

■ Section 1981 provides in relevant part:

> All persons ... shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

Rochon's Section 1981 claims invoke two of its clauses: the "make and enforce contracts" clause and the "full and equal benefit" clause. *Runyon v. McCrary*, 427 U.S. 160, 168–75, 96 S.Ct. 2586, 2593–96, 49 L.Ed.2d 415 (1976) has held the first of those clauses applies to private acts of racial discrimination.[8] As for the second clause, our own Court of Appeals has not considered its applicability to private discrimination. However, other circuits have decided that question in the negative, on the ground that such a claim necessarily implicates governmental action (*Mahone v. Waddle*, 564 F.2d 1018, 1029–30 (3d Cir. 1977); *Shaare Tefila Congregation v. Cobb*, 785 F.2d 523, 525–26 (4th Cir.1986), *rev'd on other grounds*, 481 U.S. 615, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987); but see *Hawk v. Perillo*, 642 F.Supp. 380, 389–92 (N.D. Ill.1985), rejecting *Mahone*). This Court elects to follow *Mahone* and *Shaare Tefila*.[9]

■ Rochon's Section 1981 claims thus confront a somewhat different dilemma

---

**7.** Defendants do not pose the same challenge to Rochon's state law claims.

**8.** When this opinion was written, *Patterson v. McLean Credit Union*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) had been argued and was under consideration. Since then *Patterson* has been decided, establishing that even apart from the Title VII preemption problem faced by federal employees and discussed in the text of this opinion, the contracts clause of Section 1981 does not cover racial harassment during the course of an employment relationship.

**9.** In part *Hawk* (decided before *Shaare Tefila* ) sought to parallel Section 1981 to Section 1985(3), which some courts have held applicable to private action. But Section 1981 does not have comparable language extending to actions by "two or more persons in any State or Territo-

ry"—language much more susceptible to a reading embracing nongovernmental action. And even in the Section 1985(3) context our Court of Appeals last year observed (*Stevens v. Tillman*, 855 F.2d 394, 403 (7th Cir.1988) (citations omitted)):

> This statute addresses private acts—going "in disguise on the highway" is a reference to the M.O. of the Ku Klux Klan—yet condemns only deeds that "deprive" the victim of "the equal protection of the laws, or of equal privileges and immunities under the laws," something within the domain of government exclusively. This admixture of private and public action has befuddled courts ever since.

*Patterson* also confirms the unavailability of Section 1981's second clause to Rochon.

from that faced by the *Bivens* claims. Any claim asserted against defendants as private actors must rest on the contracts clause of Section 1981. But because the only contract involved is Rochon's employment contract, such a claim would be preempted by Title VII. And any claim against defendants in an official capacity would also necessarily be in the employment context (for the only "pretense" of federal law here is in the supervisory employment relationship, as already discussed). Once again Title VII preemption would apply. Rochon's Section 1981 claims are therefore also dismissed.

### Section 1985(1) Claims

■ Rochon asserts defendants violated Section 1985(1) by "conspir[ing] by force, intimidation and threat to prevent plaintiff from discharging his duties as an FBI agent" and "from continuing as an agent in the FBI" (P. Mem. 24). It is unnecessary to examine whether those contentions supply the elements of a Section 1985(1) claim, for even if they do that claim too is preempted by Title VII.

*Stith v. Barnwell*, 447 F.Supp. 970, 973–74 (M.D.N.C.1978) held that although Section 1985(1) is applicable to federal employees, claims under that statute are preempted by Title VII insofar as they state employment discrimination claims.[10] This Court is of course not bound by *Stith*, but the same result is clearly mandated by *Brown.*

Here Rochon's claim unquestionably asserts racial harassment and discrimination in the employment context. As such, it too is preempted by Title VII.[11]

### Section 1985(2) Claims

Section 1985(2) provides a cause of action:

[i]f two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testi-

fying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for unlawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws....

That section deals with two types of conspiracies:

1. to obstruct justice in a federal court and

2. to obstruct justice in a state with intent to deny equal protection of the laws.

See *Bradt v. Smith*, 634 F.2d 796, 800–01 (5th Cir.1981).

Rochon advances a number of apparently cogent arguments for his claim, but his failure to recognize the distinct clauses and causes in Section 1985(2) ultimately spells his defeat. Although he himself has not really clarified the nature of his claim (¶ 95(b) alleges a conspiracy "to hinder and obstruct justice with intent to deny plaintiffs equal protection of the laws"), this opinion will analyze it under both clauses.

■ As for the first (federal) prong of Section 1985(2), a plaintiff must prove violation of a right actually to attend or testify in a federal court (see *Kimble v. D.J. McDuffy, Inc.*, 648 F.2d 340, 347–48 (5th Cir.1981) (en banc); *David v. United States*, 820 F.2d 1038, 1040 (9th Cir.1987); *Deubert v. Gulf Federal Savings Bank,*

---

**10.** *Irizarry v. Quiros*, 722 F.2d 869, 872 (1st Cir. 1983), cited by Rochon, is not to the contrary.

**11.** Susan, not a federal officer, can assert no claim under Section 1985(1).

820 F.2d 754, 758 (5th Cir.1987) (interference with federal administrative proceedings not sufficient to state a claim under federal prong)). Rochon has alleged no such violation.

■ On the other hand, the second branch of Section 1985(2) requires only the obstruction of "the due course of justice in any State...." Although Rochon has alleged an obstruction of justice, the claimed obstruction clearly does not involve any *state*'s "course of justice"—the only sensible construction of that provision.[12]

Both the cases on which Rochon seeks to rely are wholly inapposite. *Bell v. City of Milwaukee*, 746 F.2d 1205, 1260–61 (7th Cir.1984) found a cause of action under Section 1985(2) where police officers conspired to cover up evidence and thereby obstructed plaintiff's efforts at obtaining justice. But that coverup involved a state proceeding and was brought under the state prong of the statute. *Irizarry v. Quiros*, 722 F.2d 869, 871 (1st Cir.1983) upheld an action under the federal prong where employers denied employment to farm workers who had previously brought federal actions against them. But there the plaintiffs had been injured on account of their having brought a federal action.

Here Rochon never brought a state action (let alone had it impeded by defendants), and his federal action was not instituted until after all the complained-of incidents had occurred. His EEOC filings do not qualify for that purpose (*Deubert*, 820 F.2d at 758; *Daigle v. Gulf States Utilities Co., Local Union Number 2286*, 794 F.2d 974, 979–80 (5th Cir.1986)). Accordingly his Section 1985(2) claim is dismissed as well.

### Section 1985(3) Claim

■ *Stevens v. Tillman*, 855 F.2d 394, 404 (7th Cir.1988) (citations omitted) teaches that Section 1985(3) reaches three types of conduct:

1. Racially motivated private conspiracies to deprive persons of rights secured to all by federal law....

2. Racially motivated private conspiracies to deprive persons of rights secured to all by state law, where the deprivation interferes with the exercise of a federally protected right....

3. Racially motivated conspiracies to deprive persons of rights secured only against governmental action (such as the right of free speech), provided the defendants are either "state actors" or seeking to influence the state to act in a prohibited way.

All three categories share the common requirement of a racially motivated conspiracy, and defendants understandably make no attempt to deny the existence of such allegations in the Complaint.[13] In addition, the Complaint's allegations reflect:

1. facts supporting state law assault and invasion of privacy claims;

2. retaliation against Rochon for exercising his right to speak when complaining about harassment; and

3. inhibition of Rochon's rights to travel and freedom to associate relating to his requests for transfers.

*Stevens*, 855 F.2d at 404 goes on to explain as to the second type of violation that case identifies:

A cross burning (trespass and assault) by the Klan is an example to the extent the threat of violence induces the targets to refrain from exercising federally-assured rights, such as the rights to travel, to associate or speak, and to vote.

Clearly defendants' conduct described by plaintiffs is not conceptually different from that example. Defendants' spate of vicious (or even more subtle) threats constituted a tortious assault that struck fear in plaintiffs. Defendants' harassing phone calls at home and at work could be classified as assaults as well as tortious invasions of

---

**12.** It would be an extraordinarily strained reading if the language were construed to embrace (for example) an obstruction of "the due course of justice [in a federal court sitting] in any State...."

**13.** Given the egregious nature of defendants' alleged conduct, it is easy to see why they did not essay a denial of the sufficiency of the Complaint's allegations in that respect.

privacy. It is a reasonable inference that plaintiffs' fears induced by defendants' conduct caused Rochon to put in for transfers, implicating the right to associate. It is also a reasonable inference that Rochon was discriminatorily denied transfer to requested locations as part of the alleged conspiracy, implicating his right to travel. Finally, Rochon was punished for voicing his complaints (he was censured both in Omaha and Chicago). Such discriminatory retaliation as part of the conspiracy implicates the rights to speak and associate.

Hence plaintiffs have established either a deprivation of federal rights or a deprivation of state rights interfering with federally-protected rights, or both, as a result of a racially motivated private conspiracy. Their Section 1985(3) claim is properly alleged under one or both of the first two *Stevens*-identified categories.

This conclusion is not vitiated by the dismissal of the conspiracy claim in *Stevens*, affirmed by our Court of Appeals. There plaintiff Stevens was an elementary school principal who alleged the defendants had conspired to remove her from office because of her race. In part the conspiracy consisted of a sit-in and shouted threats—"most likely an assault under Illinois law" (855 F.2d at 395). Eventually Stevens was reassigned to another school. Under those circumstances no federal right of Stevens (in the type 1 or type 2 sense) was implicated: her rights to travel, associate and speak were not impaired (*id.* at 404). Instead Stevens sought to assert a type 3 conspiracy, whose goal was to influence the State (here the Board of Education) to act adversely to her. That conspiracy claim was rejected because the Board did *not* so act, so Stevens was not deprived of any entitlement.

Plainly nothing in that analysis or that result affects the result here. As *Stevens, id.* at 405 explains, Section 1985(3) does not supply a remedy for abuse heaped on someone on racial grounds unless there is either state action or a deprivation of some federally-secured entitlement. Here Rochon has adequately alleged the latter.

As to this claim, defendants' attempt to invoke Title VII preemption does not work. Many of the acts forming the basis for the Section 1985(3) claims were done in a private capacity and, as such, are not related to the employment context. *White v. GSA*, 652 F.2d at 917, cited by defendants, is not to the contrary. *White* merely says a retaliatory action for filing an EEOC complaint (specifically covered by Section 2000e–3) is preempted by Title VII. Here the acts alleged cannot be considered to be employment discrimination, and they are therefore not preempted.

### Gross Negligence and Negligence Claims

Plaintiffs allege four state law claims in a single Count IV: intentional infliction of emotional distress, invasion of privacy, gross negligence and negligence (¶ 102). Defendants leave the first two claims untouched, but move to dismiss the latter two.

As for "gross negligence," this Court has previously held Illinois recognizes no such claim (*Instituto Nacional de Comercializacion Agricola (Indeca) v. Continental Illinois National Bank and Trust Co. of Chicago*, 530 F.Supp. 279, 283 (N.D. Ill.1982), citing *Merit Insurance Co. v. Colao*, 603 F.2d 654, 659 (7th Cir.1979)). Nothing presented by plaintiffs affects that decision.

First plaintiffs' Mem. 76 n. 64 cites *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 186, 23 Ill.Dec. 559, 565, 384 N.E.2d 353, 359 (1978) to demonstrate that *Merit Insurance* is unreliable because its premise that Illinois courts do not recognize degrees of negligence has now been rejected. But cases such as *Kelsay* merely recognize that the quantum of negligence may affect damage awards in civil torts cases. Plaintiffs point to no case that overturns the old Illinois principle that a charge of gross negligence charges no greater culpability than ordinary negligence (*Stoike v. Bonasera*, 243 Ill.App. 281, 286–87 (1st Dist.1927)). Judge Easterbrook has invoked the even older characterization of "gross negligence as simply negligence 'with the addition of a

**1176**

vituperative epithet'" (*Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir.1988), quoting *Wilson v. Brett*, [1843] 11 M. & W. 113, 116, 152 Eng.Rep. 737 (Rolfe, B.)).

Plaintiffs also now contend their gross negligence claim is in reality a "willful and wanton misconduct" claim as described in *Hough v. Mooningham*, 139 Ill.App.3d 1018, 1020, 94 Ill.Dec. 404, 407, 487 N.E.2d 1281, 1284 (5th Dist.1986) (citation omitted):

> Willful and wanton misconduct essentially constitutes a separate tort of aggravated negligence.

But Illinois courts, unlike some others elsewhere, have held allegations of gross negligence cannot be construed as charging intentional or malicious conduct (see *Stoike*, 243 Ill.App. at 287). If plaintiffs want to advance a willful and wanton misconduct claim, they should do so in terms. In the meantime their so-called "gross negligence" claim is dismissed.

■ As for the claim of negligence sans vituperative epithet, defendants seek its dismissal for failure to allege a duty or breach of duty. To that end they quote from *Dvorak v. Primus Corp.*, 168 Ill.App. 3d 625, 633, 119 Ill.Dec. 219, 224, 522 N.E. 2d 881, 886 (2d Dist.1988) (citations omitted):

> A complaint sounding in negligence must set out facts sufficient to establish the existence of a duty owed by the defendants to the plaintiff, a breach of that duty, and an injury proximately caused by the breach.

But of course *pleading* sufficiency is a matter of federal and not state law (see *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)), and Form 9 of the Appendix of Forms following the Rules (expressly declared legally sufficient by Rule 84) tells us plaintiffs plainly pass muster in those terms. If anything, defendants might contend that they have been given *too* many facts (which are really what *Dvorak* calls for anyway) to suit Rule 8(a), but that is not at all the thrust of their argument.

As for the substantive sufficiency of the Complaint (a matter of state law), it is "based on the theory of common law negligence" that requires "the existence of a duty or an obligation requiring one to conform to a certain standard of conduct for the protection of another against an unreasonable risk" (*Barnes v. Washington*, 56 Ill.2d 22, 26, 305 N.E.2d 535, 538 (1973)). Rochons need allege no more.[14]

### Statute of Limitations

■ All defendants originally moved to dismiss all claims arising out of incidents antedating November 3, 1985. For that purpose they invoked a two-year Illinois statute of limitations they contend is applicable to Section 1985 and *Bivens* claims (Ill.Rev.Stat. ch. 110, ¶ 13–202 ("Section 13–202")). But in *Doe v. Calumet City*, 707 F.Supp. 343 (N.D. Ill.1989) this Court has reconfirmed its earlier holding that the applicable statute in Section 1983 cases is the *five*-year general residual statute of limitations of Ill.Rev.Stat. ch. 110, ¶ 13–205 ("Section 13–205"). That has been this Court's view since it originally wrote in *Shorters v. City of Chicago*, 617 F.Supp. 661 (N.D. Ill.1985), and it has been strongly reinforced by the Supreme Court's recent decision in *Owens v. Okure*, —— U.S. ——, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989).

All defendants except Hempen, Keiser and Lueckenhoff have (without waiving the issue) now acknowledged the futility of rearguing the matter (at least in this Court). Nothing those three defendants cite prompts a departure from the *Shorters–Doe* result, which is equally applicable to the surviving Section 1985 claims (*Beard v. Robinson*, 563 F.2d 331, 334–36 (7th Cir.1977); cf. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660–63, 107 S.Ct. 2617, 2620–22, 96 L.Ed.2d 572 (1987), extending to Section 1981 claims the holding of *Wilson v. Garcia*, 471 U.S. 261, 266–68, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985)

---

**14.** Plaintiffs have (no doubt inadvertently) failed to plead any injury in their state law claims (see ¶¶ 101–02). However, other allegations in the Complaint set out the alleged injury based on the same set of underlying facts (¶ 94).

as to Section 1983 claims). Because all the alleged incidents occurred within the five years preceding the filing of the Complaint, no aspect of plaintiffs' claims is time-barred.[15]

### Rule 8(a) Motion

Defendants urge the Complaint violates the Rule 8(a) requirement that it should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Defendants' basic contentions here are that:

    1. the specific constitutional violations raised by each allegation are not clear and

    2. the alleged acts of each co-conspirator are unclear as to who did what.

Both arguments are untenable.

As for the matching of factual allegations with the legal claims of constitutional violations, defendants forget the fundamental notice-pleading approach taught by the Rules: Only *facts* sufficient to make out constitutional violations are required. Defendants simply do not need the match-up to answer the Complaint's allegations.

As to the request for the match-up between incidents and co-conspirators, this Court frequently forces plaintiffs to particularize just which defendant is the target of which allegations in a complaint. In this instance, though, defendants' attack is wholly unjustified. Many of the incidents were anonymous letters and phone calls, and it is scarcely surprising to find many of the acts of such a conspiracy covert as well as craven. Plaintiffs appear to have identified actors to the best of their ability. Indeed defendants' own Mem.App. A has summarized that very information!

In sum, none of defendants' Rule 8(a) objections carries any weight. They are denied.

### Susan Rochon

Despite the length and detail of plaintiffs' allegations, one thing they have failed to do in the Complaint is to distinguish between their respective claims. Defendants' current motion papers have sought to make that distinction, with which this opinion now treats.

Only a few of the alleged acts affected Susan directly—the "fart contest" in Omaha and certain calls and bills at the Chicago residence (see D. Mem.App. B). However, it is also a reasonable inference that many of the threatening letters and calls received at work by Rochon (some of which included threats involving Susan) may have impacted on her.

At best, Susan's claims are based on facts that are a small subset of those in Rochon's claims. As n. 5 suggests, the failure of those facts to encompass any "federal action" mandates the dismissal of her *Bivens*, Section 1981 and Section 1985(1) and (2) claims. However, the earlier discussion supports the viability of her claims (as well as Rochon's) under Section 1985(3) and common law negligence theories.

### Conclusion

Plaintiffs' Complaint recites an appalling —a truly shocking—state of affairs in a federal law enforcement agency. But the present question is not how reprehensible the alleged conduct is, or even whether it is actionable at all. What plaintiffs have chosen to do is to filter their claims through what, for their allegations, is the too-closely-woven mesh of the Reconstruction Acts. As a result, even though plaintiffs' allegations raise a number of potential legal violations (not all of which appear to be alleged), they have set for themselves some insurmountable tasks.

---

**15.** After this opinion was written but before this publication, our Court of Appeals decided in *Kalimara v. Illinois Department of Corrections*, 879 F.2d 276 (1989), that the two-year statute of limitations under Section 13–202 does apply to Section 1983 claims. Accordingly the parties have been invited to readdress the statute of limitations question as to Rochon's Section 1985 and *Bivens* claims.

For the reasons stated in this memorandum opinion and order, plaintiffs' Section 1981, *Bivens,* Section 1985(1) and (2) and gross negligence claims are dismissed. Only their claims under Section 1985(3) and common law negligence theories survive the current motion, together with the state-law claims not attacked by defendants. To avoid defendants' need to respond to the patchwork result of the current ruling, plaintiffs are sent back to the drawing board to file a Third Amended Complaint on or before May 18, 1989. Defendants are then ordered to answer or otherwise plead on or before May 31, 1989. This case is then set for a status hearing at 9 a.m. June 12, 1989.