**Robert W. GOODMAN, Plaintiff,**

v.

**John A. SVAHN, et al., Defendants.**

**No. Civ. A. 83–1064.**

United States District Court, District of Columbia.

July 1, 1985.

---

John Bodner, Jr., Howrey & Simon, Washington, D.C., for plaintiff.

Lewis K. Wise, Brian G. Kennedy, Robert M. Wolff, Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

The plaintiff, Robert W. Goodman, is an administrative law judge at the Charlotte, North Carolina field office of the Social Security Administration Office of Hearings and Appeals. The Office of Hearings and Appeals ("OHA") is responsible for hearing and deciding claims for disability benefits under the Social Security Act, 42 U.S.C. §§ 401, et seq., and 42 U.S.C. §§ 1381, et seq. Plaintiff has brought this action for declaratory relief and money damages against executive officers of the Social Security Administration, challenging the defendants' formulation and implementation of certain management policies and programs concerning OHA's administrative law judges (ALJs). Specifically, plaintiff alleges that the defendants have unlawfully instituted a case production quota system under which statistics of the number of decisions rendered by an ALJ are maintained, and ALJs are pressured to decide a certain number of cases each month, or threatened with adverse action for failure to do so.

At the time this action was filed, proceedings had been initiated before the Merit Systems Protection Board (MSPB), pursuant to 5 U.S.C. § 7521, proposing the removal of the plaintiff from his position on the grounds that he had not been deciding a sufficient number of cases. During the pendency of this action, the MSPB dismissed the removal action against the plaintiff. *Social Security Administration v. Goodman*, 19 M.S.P.R. 321 (1985).[1] The plaintiff maintains that his success before the MSPB does not alter, or in any way moot, the assertions of his complaint in this

---

1. The MSPB held that, while poor performance could be found good cause for removal of an ALJ, the statistics of the plaintiff's case production compared to that of other ALJs alone, without consideration of the types of cases involved, did not establish that the plaintiff's productivity was unreasonably low. *Social Security Administration v. Goodman*, 19 M.S.P.R. 321 (1984).

action that the defendant's implementation of a case production quota system and its attendant pressures on ALJs, violate the Administrative Procedure Act, 5 U.S.C. § 551, et seq., the Fifth Amendment, the Civil Rights Act of 1861, 42 U.S.C. § 1985(1), and a settlement agreement entered into by the Social Security Administration. The plaintiff also asserts that the defendants' assignment of staff writers to write decisions for the ALJs violates his First Amendment rights.

This case is presently before the Court on defendants' motion to dismiss for lack of jurisdiction or failure to state a claim upon which relief can be granted. Fed.R. Civ.P. 12(b)(1) & (6). Upon consideration of defendants' motion, the plaintiff's opposition thereto, and the supplemental memoranda submitted, the Court concludes that defendants' motion should be granted.

### Administrative Procedure Act & the Fifth Amendment

The plaintiff maintains in this action that, by imposing arbitrary case production quotas on OHA's administrative law judges, the defendants have violated his rights to decisional independence under the Administrative Procedure Act and the Fifth Amendment.

The Administrative Procedure Act does in fact contain a number of provisions designed to safeguard the status of ALJs as independent hearing examiners for the receipt of evidence and initial rendering of a decision. These provisions remove from the employing agency any decisionmaking power with respect to the ALJs' compensation and tenure. See generally Butz v. Economou, 438 U.S. 478, 513–14, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978); Ramspeck v. Federal Trial Examiners Conference, 345 U.S. 128, 132, 73 S.Ct. 570, 573, 97 L.Ed. 872 (1953). Thus, an administrative law judge's compensation is deter-

mined by the Office of Personnel Management without agency recommendations and ratings, and with no monetary award or periodic step increases based on performance. 5 U.S.C. §§ 554; 5372. Moreover, ALJs are exempt from the performance appraisals to which other federal employees are subject, which may result in removal or reduction in grade for unsatisfactory performance. 5 U.S.C. § 4302. Instead, ALJs may be removed only by a determination of the MSPB, after a hearing, that the agency has established good cause for the removal. 5 U.S.C. § 7521. In this manner, the process of agency adjudication is structured to "assure that the ... [ALJ] exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency." Butz, 438 U.S. at 513, 98 S.Ct. at 2914 (1978).

 An administrative law judge's individual rights associated with his position are purely the creation of Congressional enactment, and are not Constitutionally protected. Ramspeck v. Trial Examiners Conference, 345 U.S. 128, 133, 73 S.Ct. 570, 573, 97 L.Ed. 872 (1953); see also Nash v. Califano, 613 F.2d 10, 15 (2d Cir.1980). An administrative law judge's rights, therefore, are limited to the protections of his compensation and tenure found in the Administrative Procedure Act. Consequently, to the extent a larger right of decisional independence exists, arising either from the Due Process Clause of the Fifth Amendment or the APA or Social Security Act, such a right would belong to the claimants whose rights are adjudicated by the ALJs, rather than to the ALJs themselves, and therefore would not create a right to relief in this plaintiff. See Kalaris v. Donovan, 697 F.2d 376, 377, 399 n. 91 (D.C.Cir. 1983); see also D'Amico v. Schweiker, 698 F.2d 903 (7th Cir.1983).[2]

---

**2.** The plaintiff has not asserted any claims in this action on behalf of the Social Security claimants who appear before him. Any such asserted claims would certainly present a serious question of standing involving considerations of whether the claimants could adequately

assert such claims on their own behalf and whether the plaintiff could in fact fairly represent the interests of the Social Security litigants. The difficulty of resolving this latter question is made evident by the numbers of cases brought by Social Security claimants seeking to expedite

■ Given that plaintiff's rights concerning his position as an administrative law judge are limited to those statutorily defined, plaintiff has failed to allege an injury redressable through a remedy of this Court under the Administrative Procedure Act. The only right set forth in the APA potentially implicated by the quota system alleged by the plaintiff is his protection against removal in the absence of good cause. However, the APA explicitly creates a remedy for alleged interference with this right by granting plaintiff the right to contest any adverse action at the MSPB before it takes effect, as well as the right to seek subsequent remedial review in the United States Court of Appeals for the Federal Circuit.

The explicit statutory protections for the plaintiff's tenure rights precludes the recognition of a right of action for declaratory relief or money damages in this Court. Where, as here, the statute "creates a right and provides a special remedy, that remedy is exclusive." *Renegotiation Board v. Bannercraft Co.*, 415 U.S. 1, 18, 94 S.Ct. 1028, 1037, 39 L.Ed.2d 123 (1974) (quoting *United States v. Babcock*, 250 U.S. 328, 331, 39 S.Ct. 464, 465, 63 L.Ed. 1011 (1919)). Consequently, recognition of a damage remedy in this case is precluded by the comprehensive alternative administrative remedy provided by Congress. *Northwest Airlines v. Transport Workers Union*, 451 U.S. 77, 97, 101 S.Ct. 1571, 1583, 67 L.Ed.2d 750 (1981); *see Bush v. Lucas*, 462 U.S.

367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); *Carlson v. Green*, 446 U.S. 14, 18–19, 100 S.Ct. 1468, 1471–72, 64 L.Ed.2d 15 (1980); *Whitney National Bank v. Bank of New Orleans*, 379 U.S. 411, 422, 85 S.Ct. 551, 558, 13 L.Ed.2d 386 (1965).

The plaintiff has continually protested in this action that his administrative remedies to challenge adverse action taken against him under the "good cause" standard afford him no ability to challenge the day-to-day interference with his duties that falls short of actual adverse action. The simple fact remains, however, that plaintiff has only those specific rights enumerated in the APA. Unless adverse action, such as removal, is initiated against him, he has not suffered any injury cognizable under that statute that is ripe for review by any court.[3] If such adverse action is initiated, giving rise to a claim, this Court is not the proper court to consider it.

### 42 U.S.C. § 1985(1)

■ Plaintiff also asserts that the defendants violated his rights under the Civil Rights Act of 1861, 42 U.S.C. § 1985(1). Section 1985(1) provides:

> If two or more persons ... conspire to prevent, by force, intimidation, or threat, any person ... from discharging any duties [of any office, trust or place of confidence under the United States] ... or to injure him in his person or property on account of his lawful discharge of the

---

the administrative review process. *See Heckler v. Day*, 467 U.S. 104, 104 S.Ct. 2249, 81 L.Ed.2d 88 (1984); *Sharpe v. Harris*, 621 F.2d 530 (2d Cir.1980); *Cochrun v. Califano*, 475 F.Supp. 1222 (D.D.C.1979), *aff'd*, 634 F.2d 1358 (D.C.Cir. 1980); *Blankenship v. Secretary of HEW*, 587 F.2d 329 (6th Cir.1978).

**3.** Plaintiff has principally relied upon *Nash v. Califano*, 613 F.2d 10 (2d Cir.1980), to support the argument that interference with his right of "decisional independence" is an injury redressable in this Court under the APA. In *Nash*, however, the court simply held that an ALJ raising claims similar to the plaintiff here was improperly dismissed for lack of standing. The *Nash* court held only that Nash had satisfied the two-part standing test of *Association of Data Processing Service Organizations, Inc. v. Camp*,

397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) —that the plaintiff had suffered some cognizable injury-in-fact and was *"arguably"* within the zone of interests to be protected or regulated by the statute ... in question." *Id.* at 153, 90 S.Ct. at 829. The *Nash* court repeatedly emphasized, however, that its decision on standing had no bearing on the merits of Nash's claim. 613 F.2d at 14 & 17. Consequently, to say that plaintiff has suffered *some* injury and *may* have *some* right under the APA in no way reaches the issue of whether the plaintiff has properly stated a cause of action sufficient to withstand a motion to dismiss. *See Counsel of and for the Blind v. Regan*, 709 F.2d 1521, 1524 & n. 12 (D.C.Cir. 1983) (en banc) (finding plaintiff failed to state claim notwithstanding earlier decision that plaintiff had standing).

duties of his office, or while engaged in the lawful discharge thereof ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Plaintiff maintains that the defendants' imposition of arbitrary case production quotas interferes with, and injures him in the conscientious discharge of his obligations under the Social Security Act, 42 U.S.C. § 405, et seq., to inquire fully into the evidence of the case before him and to carefully consider that evidence in rendering a decision.

In *Lawrence v. Acree,* 665 F.2d 1319 (D.C.Cir.1981), officials of the United States Customs Service were sued for damages under section 1985(1) in their personal capacities for submitting an adverse performance evaluation of the plaintiff, allegedly to secure the plaintiff's resignation. The defendants in *Acree* raised the defense of absolute immunity. Recognizing that the case involved a federal statutory tort under section 1985(1), the *Acree* majority declined to find either the absolute immunity of federal officials from common law torts for actions within the scope of their authority, *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), or the general rule of qualified immunity of federal officials for actions arising under the Constitution, *Butz v. Economu,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), to control the case at hand. Instead, the *Acree* majority held that, assuming *Barr* inapplicable by drawing a distinction between statutory and common law torts, absolute immunity was nevertheless appropriate under the circumstances. The *Acree* majority held under the rationale of *Butz* supporting absolute immunity for all torts, constitutional and otherwise, for members of the Executive Branch performing prosecutorial and adjudicative functions, absolute immunity could likewise be extended to other officials for non-common law torts "where it is demonstrated that absolute immunity is 'essential to the conduct of public business.'" *Acree,* 665 F.2d at 1326

(quoting *Butz,* 438 U.S. at 507, 98 S.Ct. at 2911). The court noted in *Acree* that, outside of the executive functions specified in *Butz* for blanket absolute immunity, "[t]o determine whether absolute immunity exists in any given situation [the court] must focus on the particular conduct and the circumstances that gave rise to the claim of liability. 665 F.2d at 1327 (citation omitted). The Court concluded in *Acree* that the defendants' performance appraisal of the plaintiff was essential to the conduct of public business, involving the "strong governmental interest in having a frank and honest assessment of federal employee work performance ... absolutely essential to the proper rendering of federal services to our citizens." *Id.* at 1327.

Although the governmental interests at stake in the current case differ from those in *Acree* in that the agency may not review an ALJ's performance for tenure and salary purposes, this Court likewise finds the defendants' conduct here essential to the functioning of our system of government, and the rendering of services to its citizens. The Civil Service Reform Act vests with the agency the obligation to initiate removal proceedings where it believes good cause exists for an ALJ's removal. 5 U.S.C. § 7521. It is crucial, therefore, that agencies, through their officials, be able to form—and if necessary to act upon—their frank and honest assessment of the factors they believe pertinent to an ALJ's fitness for his position. Consequently, it is within the authority of such officials to gather facts upon which to base that assessment. *See. Association of Administrative Law Judges v. Heckler,* 594 F.Supp. 1132, 1140 (D.D.C.1984); *see also* Scalia, *The ALJ Fiasco—A Reprise,* 47 U.Chi.L.Rev. 57, 67 n. 49 (1980); J. Mashaw, C. Goetz, F. Goodman, W. Schwartz, P. Verkuil, & M. Carrow, Social Security Hearings and Appeals 123 (1978). Certainly, the competency of the Social Security Administration ALJs is fundamental to the process of government in safeguarding the rights of those individuals whose claims they consider. Accordingly, plaintiff's claims under section 1985(1) must be dismissed.

Again, to say that these defendants are personally absolutely immune from liability under section 1985(1) for their part in the development of a case production quota system, and the institution of any removal process based on that system, does not place this Court's approval on that system or otherwise leave the plaintiff remediless. Rather, the decision of whether such a quota system is lawful may still be considered by the MSPB and the United States Court of Appeals for the Federal Circuit when utilized to establish good cause for removal of those ALJs considered deficient, and properly lies only with those forums. *See Acree,* 665 F.2d at 1327 (availability of alternative remedies underscores lack of hardship from recognition of absolute immunity of federal officials from statutory damage action).

### The Bono Settlement Agreement

Plaintiff additionally maintains that the defendants' actions complained of here are in violation of a settlement agreement entered in *Bono v. United States of America Social Security Administration,* W.D. Mo., Civil Action No. 77–0819–CV–W–4 (July 26, 1979). The action of *Bono v. United States of America Social Security Administration,* No. 77–0819–CV–W–4 (W.D.Mo.), was filed in November 1977 by five ALJs who alleged, as has this plaintiff, that ALJ case production quotas and related OHA management policies violated the APA and the Fifth Amendment. On June 19, 1979 the parties in *Bono* executed a settlement agreement which provided that OHA would not set specific disposition quotas for ALJs. Plaintiff asserts that he may seek to enforce the settlement agreement in this Court under Rule 71 of the Federal Rules of Civil Procedure, which provides:

> When an order is made in favor of a person who is not a party to the action, he may enforce obedience to the order by the same process as if he were a party.

The *Bono* settlement further provided. however, for dismissal of that action with prejudice. Therefore, to the extent plain tiff seeks to assert he is a beneficiary of the *Bono* settlement within the meaning of F.R.Civ.P. 71 he must recognize validity of all aspects of the settlement. Accordingly, given the dismissal with prejudice in *Bono,* plaintiff cannot collaterally seek to enforce its provisions in a separate action, but instead should seek enforcement in the *Bono* action itself. *See Ozyagcilar v. Davis,* 701 F.2d 306, 308 (4th Cir.1983) (well settled that district court retains inherent jurisdiction and equitable power to enforce agree ments entered into in settlement of litiga tion before that court).

Moreover, given that any action to en force the *Bono* settlement would involve considerations of whether an enforceable agreement in fact exists, and in the case of this plaintiff, whether he was a person in whose favor the settlement was entered within the meaning of F.R.Civ.P. 71, con sideration of such issues by the court of origination fosters judicial economy.[4]

### First Amendment

Finally, plaintiff seeks damages from the defendants for alleged violations of his First Amendment rights. Plaintiff maintains that, as part of the defendants' efforts to force him to increase his case production, the defendants have coerced him to use staff writers in the preparation of his written decisions. The plaintiff maintains that this coercion, along with the defendants' refusal to permit him to indicate in the decision that it was drafted by the staff writer, violates his First Amendment rights by "requiring him to endorse, adopt and represent as his own work, his own views and his own decisions opinions written by others whose contents he does not accept or agree with." Plaintiff's Memorandum in Opposition to Motion to Dismiss, at 35.

---

**4.** To the extent plaintiff's claim seeking enforcement of the *Bono* settlement may be regarded as a third-party beneficiary contract claim, as plaintiff asserts, it is within this Court's discretionary pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). In that instance, for the reasons of judicial economy set forth above, and given the dismissal of all plaintiff's other claims before this Court, the Court declines to exercise such pendent jurisdiction. *Id.*

Plaintiff's opposition to defendants' motion to dismiss makes evident, however, that he has not in fact been *required* to sign opinions with which he does not agree, or even to use staff writers at all. Instead, the gravamen of plaintiff's complaint is that he has been exhorted or pressured to take such actions in order to maintain a satisfactory level of case dispositions or face the threat of adverse action. *See* Plaintiff's Memorandum in Opposition to Motion to Dismiss, at 35. Again, nothing prevents the plaintiff from resisting such pressure and challenging the defendants' conduct in any removal proceeding initiated. Given the absence of any actual requirement that the plaintiff used staff writers, no violation of the First Amendment can be found. Moreover, even with such a violation, plaintiff's exclusive recourse lies in the extensive administrative process developed to protect plaintiff from removal on the basis of that violation. *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

### Conclusion

Therefore, for the reasons set forth above, defendants' motion to dismiss is granted.