# Authority of Education Department Administrative Law Judges in Conducting Hearings

Administrative law judges within the Department of Education, being employees of the Department, do not have authority to conduct administrative hearings in a manner contrary to the Department's rules, to invalidate such rules, or to interpret such rules in a manner contrary to the Secretary's interpretation.

January 12, 1990

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF EDUCATION

You have requested our opinion whether administrative law judges ("ALJs") within the Department of Education ("Department") who preside over agency hearings required by 20 U.S.C. § 1234 to be conducted in accordance with the Administrative Procedure Act, 5 U.S.C. §§ 551-596 ("APA"), have independent authority to conduct those proceedings in a manner contrary to the Department's rules, to invalidate such rules, or to interpret such rules in a manner contrary to the Secretary's interpretation.[1] We conclude that ALJs, being employees of the Department, have no such authority. While ALJs have authority to regulate the conduct of administrative proceedings before them, such authority remains "[s]ubject to published rules of the agency," *id.* § 556(c), and therefore may be exercised only in accordance with "such rules as the Secretary shall prescribe by regulation." 20 U.S.C. § 1234(f).

## I. Background

The questions posed here concerning the scope of a Department ALJ's power have arisen as a result of decisions by such ALJs asserting independent authority over procedural matters in administrative hearings. You have provided us with a copy of one such decision, the recent opinion of ALJ Daniel R. Shell in *In the Matter of Franklin-Northwest Supervisory Union,* No. 89-4-R ("Order Denying Stay for Settlement Negotiations [and] Order Granting Stay for Mediation") (Dec. 11, 1989) ("Opinion"). In that matter, applicant Franklin-Northwest and the Department jointly requested a stay of administrative proceedings pending settlement negotiations. The applicable Department regulation provides that "[i]f the parties to a case file a joint motion requesting a stay of the proceedings for settlement negotiations or the approval of a settlement agreement, the ALJ grants the stay." 34 C.F.R. § 81.14(a) (1989).

---

[1] *See* Memorandum for the Under Secretary, Department of Education, from Edward C. Stringer, General Counsel, Department of Education (Dec. 15, 1989) (expressing General Counsel's concerns with recent ALJ rulings).

ALJ Shell denied the motion. He concluded that administrative law judges have the duty under the APA and under their delegated judicial authority in the Department of Education to exercise the judicial function in an independent manner and to regulate the course of proceedings before them. ALJ Shell concluded that 34 C.F.R. § 81.14(a) interfered with his exercise of this judicial responsibility, and he ruled that "the Secretary cannot promulgate regulations that would deny the [administrative law] judge the opportunity to exercise the responsibilities of the judicial function of 5 U.S.C. 554, 556, 557 nor deny the [administrative law] judge judicial independence." Opinion at 9. Mr. Shell therefore rejected the authority of the Secretary's regulation and denied the joint stay application of the Department and Franklin-Northwest. In the alternative, Mr. Shell construed 34 C.F.R. § 81.14(a) as not requiring an ALJ to grant a joint stay motion for settlement.

## II. Analysis

Administrative law judges have no constitutionally based judicial power, see *Ramspeck v. Federal Trial Examiners Conference*, 345 U.S. 128, 132-33 (1953), but are employees of the executive branch department or agency employing them. See 20 U.S.C. § 1234(c) (statute establishing the Office of Administrative Law Judges within the Department of Education provides that ALJs "shall be officers or employees of the Department"). As such, ALJs are bound by all policy directives and rules promulgated by their agency, including the agency's interpretations of those policies and rules. *See Nash v. Bowen*, 869 F.2d 675, 680 (2d Cir.), *cert. denied*, 493 U.S. 813 (1989); *Mullen v. Bowen*, 800 F.2d 535, 540-41 n.5 (6th Cir. 1986); *Brennan v. Department of Health and Human Services*, 787 F.2d 1559 (Fed. Cir.), *cert. denied*, 479 U.S. 985 (1986); *Goodman v. Svahn*, 614 F. Supp. 726, 728 (D.D.C. 1985); *Association of Administrative Law Judges, Inc. v. Heckler*, 594 F. Supp. 1132, 1141 (D.D.C. 1984); *cf. D'Amico v. Schweiker*, 698 F.2d 903, 906 (7th Cir. 1983). *Accord* 34 C.F.R. § 81.5(b) (embodying in Department regulations the requirement that ALJs adhere to policies and rules of the agency). ALJs thus do not exercise the broadly independent authority of an Article III judge, but rather operate as subordinate executive branch officials who perform quasi-judicial functions within their agencies. In that capacity, they owe the same allegiance to the Secretary's policies and regulations as any other Department employee.

The obligation of ALJs to adhere to their employer's policies and rules extends to matters of administrative procedure in the conduct of agency hearings. The APA explicitly provides that the power of employees presiding at agency hearings is subject to the rules prescribed by the employing agency:

> *Subject to published rules of the agency and within its powers*, employees presiding at hearings may — . . . (5) regulate the course of the hearing; . . . (9) dispose of procedural requests or similar matters; . . . .

5 U.S.C. § 556(c) (emphasis added). The statute establishing the Office of Administrative Law Judges within the Department echoes the restrictions of § 556(c) by stating that

> [t]he proceedings of the Office shall be conducted according to such rules as the Secretary shall prescribe by regulation in conformance with the rules relating to hearings in Title 5, sections 554, 556, and 557.

20 U.S.C. § 1234(f)(1).

That ALJs remain subject to the authority of the agency in all matters of policy, procedure, and interpretation of law is wholly consistent with the type of judicial independence mandated by the APA. The APA requires both a separation of functions within the agency, 5 U.S.C. § 554(d), and that ALJs have certain tenure protections. *Id.* § 7521. Thus, to maintain the integrity of agency adjudicative proceedings, an ALJ is prohibited from certain *ex parte* contacts with parties involved in the adjudication, may not be responsible to another employee engaged in investigative or prosecutorial functions, and may not participate in the decision of a case in which he has performed an investigative or prosecutorial function. These restrictions do not, however, establish that ALJs are free to ignore agency rules for the conduct of agency hearings. To draw the conclusion that ALJs are not bound by such agency rules would be to read § 554(d) as implicitly nullifying § 556(c). Such a construction would be contrary to well established principles of statutory interpretation disfavoring implied repeals. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017-18 (1984) (repeals by implication are disfavored). Rather, an ALJ is "independent" within the meaning of § 554(d) only in that he may not also perform another agency function with respect to a proceeding over which he presides as a hearing officer.

Similarly, 5 U.S.C. § 7521 provides ALJs with only a limited "independence" from agency officials by providing tenure protection from unjustified agency reprisal. Section 7521 provides that ALJs may be removed from their positions, or otherwise disciplined, only for cause and after notice and a hearing before the Merit Systems Protection Board. 5 U.S.C. §§ 5372, 7521. *See generally* 5 C.F.R. §§ 930.201-930.216 (1981). This measure of independence does not, however, mean that ALJs may disregard agency rules that are binding on them. *Mullen*, 800 F.2d at 540 n.5. To the contrary, failure to adhere to agency policies and procedures may constitute "good

3

cause" sufficient to warrant the discharge or discipline of an employee serving as an administrative law judge. 5 U.S.C. § 7521; *see, e.g., Brennan v. Department of Health and Human Services,* 787 F.2d 1559 (Fed. Cir.), *cert. denied,* 479 U.S. 985 (1986) (affirming suspension of ALJ for failure to comply with office administrative procedures).

A 1977 published Attorney General opinion supports our conclusion. In describing the legislative history of the APA, that opinion notes that Congress rejected a minority recommendation for complete segregation of administrative law judges into independent agencies in favor of more limited independence for ALJs in terms of tenure and compensation. 43 Op. Att'y Gen. 64-67 (1977). The opinion does observe that, within the scope of powers granted ALJs under 5 U.S.C. § 556(c), those powers are to be exercised without agency interference. But this conclusion in no way implies that ALJs are not "[s]ubject to published rules of the agency," 5 U.S.C. § 556(c), in the conduct of agency proceedings and the exercise of their other statutory powers. Such an implication would be contrary to the plain language of § 556(c).

ALJ Shell relied on *Butz v. Economou,* 438 U.S. 478, 513 (1978), as support for his theory that ALJs are not bound by agency rules. We believe, however, that the *Butz* case is fully consistent with our conclusion. In that case, the Supreme Court described the role of an ALJ as being "functionally comparable" to that of a judge. Read in context, however, that statement provides no support for the assertion that ALJs may conduct agency hearings or adjudications independently of agency regulations. The issue in *Butz* was whether ALJs and other investigative, prosecuting, and trial officials of the Department of Agriculture were entitled to the same immunity from tort liability for their official actions as Article III judges and government prosecutors. The Court held that, like Article III judges, agency officials must be able to make decisions free from the intimidation or harassment of retaliatory litigation. *Id.* at 514-17. In that context, the Court held that an administrative law judge is "functionally comparable" to an Article III judge, who enjoys absolute immunity. Significantly, however, the Court held that this functional comparability also applied to prosecutors and grand jurors, *id.* at 511-12; *see Imbler v. Pachtman,* 424 U.S. 409 (1976), and therefore to agency officials who initiate administrative proceedings against individuals, and to those who conduct trials and present evidence. *Butz,* 438 U.S. at 515-17. "Functional comparability" in this context thus bears no relation to the scope of an ALJ's authority with respect to agency rules. *Butz* does not overrule the holding in *Ramspeck* that ALJs are "semi-independent *subordinate* hearing officers," *id.,* 345 U.S. at 132 (original quotation marks omitted, emphasis added), or supersede 5 U.S.C. § 556(c), which plainly requires

ALJ subordination to agency procedures for conduct of administrative hearings or adjudications.[2]

As an alternative ground for denying the joint stay application in the Franklin-Northwest matter, Mr. Shell interpreted 34 C.F.R. § 81.14(a) as not requiring an ALJ to grant a joint stay motion for settlement. The regulation provides that, upon joint motion of the parties requesting a stay of proceedings for settlement negotiations, "the ALJ grants the stay." *Id.* Mr. Shell declared that because the language states that "the ALJ grants" rather than "the ALJ *shall* grant," the granting of the motion was not mandatory. Opinion at 10-12. Based on the analysis provided above, we believe that it is clear that an ALJ, being a subordinate employee of the Secretary, is without authority to adopt a construction of a Department rule at variance from the construction of the Secretary or his designee (here, the General Counsel). *See Nash,* 869 F.2d at 680; *Brennan,* 787 F.2d at 1559-61; *Bauzo v. Bowen,* 803 F.2d 917, 921 (7th Cir. 1986); *Association of Administrative Law Judges,* 594 F. Supp. at 1141.

In any event, we believe that the Department's interpretation of § 81.14(a) is plainly correct. The fact that the regulations are written in a present tense, active voice style does not negate their mandatory character. We think Mr. Shell's construction is strained and effectively nullifies the regulation. The plain import of this provision is that the ALJ is *required* to grant the stay upon the joint motion of the parties. The explanatory notes accompanying the proposed regulations clearly indicate that the ALJ is required to stay the proceedings if requested by both parties. *See* 53 Fed. Reg. 48,866 (1988). We are informed that no comments were received on this section of the proposed regulations. The wording of the final regulation therefore was not changed, nor was the intended meaning of the provision as set forth in the explanatory comment contradicted. Accordingly, the correct inference is that the meaning and effect of the regulation were unchanged from that reflected in the explanatory comment accompanying the proposed rule.

---

[2] No due process issue is presented by the requirement that ALJs adhere to the agency's policies and rules. The requirement specifically at issue here — that ALJs stay administrative proceedings for settlement discussions upon the joint motion of the parties, 34 C.F.R. § 81.14(a) — cannot be said to conflict with any provision of the APA or to deprive any person of due process of law. Moreover, it is plain that ALJs lack standing to assert such a due process challenge, which can arise only where a private party is aggrieved by the adjudicative procedures employed by an agency. *Goodman,* 614 F. Supp. at 728; *see Kalaris v. Donovan,* 697 F.2d 376, 399 n.91 (D.C. Cir.), *cert. denied,* 462 U.S. 1119 (1983); *D'Amico,* 698 F.2d at 905-06. An administrative law judge lacks any legally cognizable "right" to raise a constitutional challenge to an agency rule or procedure that does not injure him in his personal capacity, but has only such rights of stature by virtue of his position as are conferred by statute. *Ramspeck,* 345 U.S. at 133; *Goodman,* 614 F. Supp. at 728. *See also Nash,* 869 F.2d at 680; *Association of Administrative Law Judges,* 594 F. Supp. at 1141.

5

## III. Conclusion

For these reasons, we conclude that administrative law judges within the Department of Education must abide by the written rules and regulations adopted by the Secretary for the conduct of administrative proceedings and by the Secretary's interpretation of such regulations.

WILLIAM P. BARR
*Assistant Attorney General*
*Office of Legal Counsel*

6