Adrian V. SANNIER, Allen C. Youngblood, and Bruce S. King, Petitioners,

v.

MERIT SYSTEMS PROTECTION BOARD, Respondent.

No. 90–3463.

United States Court of Appeals, Federal Circuit.

April 23, 1991.

Adrian V. Sannier and Allen C. Youngblood, Office of Hearings & Appeals, Lansing, Mich., argued, for petitioners. Bruce S. King, Office of Hearings & Appeals, Lansing, Mich., was on the brief, for petitioners.

Agnes M. Brown, Atty., Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With her on the brief, were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Terrence S. Hartman, Asst. Director. Also on the brief, was Daniel Edelman, Dept. of Health & Human Services, Washington, D.C., of counsel.

Joseph B. Kennedy, Washington, D.C., represented the amicus curiae, Federal Administration Law Judges Conference.

Before MARKEY, MICHEL, and RADER, Circuit Judges.

MICHEL, Circuit Judge.

Petitioners appeal the final decision of the Merit Systems Protection Board ("MSPB" or "Board"), *In re Sannier, et al.*, 45 M.S.P.R. 420 (1990), dismissing their action for lack of subject matter jurisdiction on the ground that petitioners had not alleged sufficient facts to establish constructive removal from their positions as Administrative Law Judges. If petitioners had made allegations sufficient to establish constructive removal, they would have been entitled to prior hearings and determinations of "good cause," as required by 5 U.S.C. § 7521 (1988), before agency execution of the alleged administrative actions. Because, *inter alia*, as a matter of law, even if proven, the actions alleged did not constitute constructive removal, and therefore no prior hearings or determinations were necessary, we affirm.

## BACKGROUND

Petitioners are Administrative Law Judges ("ALJ") of the Social Security Administration ("SSA") assigned to the Lansing, Michigan, Office of Hearings and Appeals ("OHA"). On August 4, 1989, they filed a petition before the MSPB against Theodore Haynes, Regional Chief ALJ ("RCALJ"), and the Commissioner and Associate Commissioner of the SSA, alleging, *inter alia*, that a series of administrative actions taken by the SSA and RCALJ Haynes constituted constructive removal requiring a prior hearing and a determination of "good cause" under section 7521. There is no indication in the record, nor does the government argue otherwise, that any such hearings or determinations ever occurred.

On January 10, 1989, petitioners alleged that RCALJ Haynes conducted a Regional Conference telephone call informing all ALJs that offices of "non-producers" would lose service areas and that requests for transfers from "low produc[ing]" ALJs would not be approved. Complaint at 4. Four weeks later, on February 6, 1989, petitioners said that RCALJ Haynes transferred various service areas in northern Michigan from the Lansing OHA to pro-

mote "more timely service to the public." Jt.App. at Ex. E. Petitioners further alleged that since their service areas were reduced, "repeated threats [had] been conveyed" from the RCALJ's office that the Lansing office would be closed and that Lansing staff employees were encouraged to transfer so that the office "would be allowed to 'die on the vine.'" Complaint at 5–6. At a May 1989 workshop for attorneys, representatives, and vocational experts who appear before the Lansing ALJs, petitioners also alleged that RCALJ Haynes made disparaging remarks about them in their capacity as ALJs. According to the complaint, RCALJ Haynes referred to the "Lansing judges as his 'dirty linen'" and further stated that the Lansing office did not adjudicate claims in a timely manner, that "while he could not supervise the judges, he could deal with them through staffing," that "he would not replace staff ... until adjudication of cases increased," and finally that ALJs should be able to hear forty cases a month "without affecting the quality of their decisions." Complaint at 8–9.

Because of these actions, petitioners claimed, they were constructively removed as ALJs, because their "independent adjudicative authority" had been undermined. *Sannier*, 45 M.S.P.R. at 423.

On October 25, 1989, the Administrative Judge issued his recommended decision that MSPB dismiss for lack of subject matter jurisdiction. On July 2, 1990, the full Board modified and supplemented certain findings of fact and conclusions of law in the recommended decision and adopted it as the decision of the Board.

## DISCUSSION

### Jurisdiction and Standard of Review

This court's jurisdiction arises under 28 U.S.C. § 1295(a)(9) (1988), and our scope of review is defined and limited by statute. We will affirm the Board's decision unless it is found to be either arbitrary and capricious, obtained without procedures required by law, contrary to law, or unsup-

ported by substantial evidence. 5 U.S.C. § 7703(c) (1988).

## I

■ The burden of establishing subject matter jurisdiction lies with petitioners, *Maddox v. Merit Sys. Protection Bd.*, 759 F.2d 9, 10 (Fed.Cir.1985), and Board jurisdiction encompasses only that subject matter specifically granted to it by statute. *Smith v. Merit Sys. Protection Bd.*, 813 F.2d 1216, 1218 (Fed.Cir.1987). To this court, petitioners argue that alleged administrative actions taken by SSA and RCALJ Haynes were properly within the Board's remedial jurisdiction. As a result of these acts, petitioners contend, they were constructively removed from their positions as ALJs. They base this contention on the ground that the alleged acts, taken both singularly and cumulatively, constitute an "improper interference with an Administrative Law Judge's judicial function." Sannier Br. at 3.

■ Section 7521 establishes and limits Board jurisdiction concerning adverse personnel actions taken against ALJs, and further specifies those actions that may be initiated "only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board," 5 U.S.C. § 7521(a). However, section 7521(b) specifically excludes from Board review reductions in force, suspension or removal for national security reasons, and actions by the Special Counsel that would otherwise require a "good cause" finding by the Board. Also omitted are reprimands and other less serious disciplinary acts. "Reprimands ... are not among the actions set forth in section 7521. As a result, agencies do not need to establish that good cause exists ... because they do not need [Board] authorization to issue reprimands." *In re Perry*, 39 M.S.P.R. 446, 450 (1989). Clearly, the Board was given "prior-approval power over *serious* ALJ disciplinary actions in order to protect the administrative adjudicatory process—[but it was not Congress' intention] to have the Board sit in judgment over all agency *managerial and supervisory decisions*, no matter how minor, regarding [ALJs]." *Id.* (emphasis added).

Petitioners do not, and cannot, contend under these facts that they were subjected to any of the enumerated adverse personnel actions listed in subsection (b). Instead, they argue solely that the agency's managerial actions constituted a constructive removal. Although a "constructive" removal is not specifically enumerated in subsection (b), the Board, as well as this court, has recognized that certain acts may be the equivalent, for purposes of Board jurisdiction, of formal removal. *Schultz v. United States Navy*, 810 F.2d 1133, 1136 (Fed.Cir.1987). As to ALJs, the Board recognizes the possibility that an ALJ may be constructively removed by "cumulative administrative actions or active intervention ... [which] prevent the impartial exercise of his judicial functions ... [and which have] a pernicious effect on the complaining judge's qualified independence." *In re Doyle*, 29 M.S.P.R. 170, 175 (1985). Therefore, as long as the agency actions are not alleged to affect the ability of the ALJ to function as an independent and impartial decision maker, they cannot trigger Board jurisdiction under section 7521. *Goodman v. Svahn*, 614 F.Supp. 726, 728 (D.D.C. 1985).

We agree with the Board that "even if [it] were to assume that the ALJs have suffered, among other things, staffing shortages, transfer restrictions and reduced service areas due to management's perception that the Lansing ALJs production rate was low, they have not alleged in any of the many papers submitted that these actions of management have interfered with their impartial decisionmaking ability." *Sannier*, 45 M.S.P.R. at 426. Well-pleaded allegations tying the agency actions to impairment of their decisionmaking independence are, at minimum, necessary to establish *prima facie* Board jurisdiction.

While ALJ King does contend that the increased pressure to process more cases has led to a higher "reversal rate," he has not specifically alleged that his decision-

making has been *affected* by the agency's management decisions. Therefore, petitioners' constructive removal claim properly was not entertained by the Board. *See In re Doyle*, 29 M.S.P.R. at 175.

Petitioners assert that "[w]hatever [they] may or may not be able to establish as to the merits of their allegations, given the favorable reading required by the Federal Rules of Civil Procedure [or similar procedural guidelines]," they are entitled to a hearing. Sannier Br. at 15, citing *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974). While courts and the Board should not eviscerate legitimate appeals solely on the ground of a too strict reading of the allegations, petitioners' attempt to paint themselves as victims of a technical trap is disingenuous. Even if we, as did the Board, assume *arguendo* that the agency explicitly instituted overall targets or goals for the number of appeals to be adjudicated per month, such production targets simply are not, by themselves, probative that the ALJ's impartiality or independence in a particular appeal has been or would be compromised. Consequently, since petitioners fail to allege that the productivity targets compromised their judicial independence, much less how or why, we have no occasion to determine whether, under these circumstances, their decisionmaking integrity was affected.

## II

Petitioners argue that the Board erred by not holding a hearing in regard to their claims. However, the Board is not required to hold a hearing when facts giving rise to jurisdiction are not properly alleged, even though, as here, its existence may be asserted. *Rose v. Department of Health and Human Servs.*, 721 F.2d 355, 357 (Fed.Cir.1983) (no statutory right to a hearing on jurisdiction under similar statute defining MSPB jurisdiction); *accord Manning v. Merit Sys. Protection Bd.*, 742 F.2d 1424, 1427–28 (Fed.Cir.1984) (right to hearing applies "only after jurisdiction has been properly invoked"). This court did note in *Manning*, however, that the Board *may* hold a hearing if non-frivolous juris-

dictional allegations are made and cannot be decided on written submissions alone. *Manning*, 742 F.2d at 1428. Upon review of the pleadings and record, however, the Board clearly did not err by deciding the question of its subject matter jurisdiction without a hearing.

## III

Finally, ALJs Youngblood and King both appeal the Board's determination that the relief petitioners seek is beyond the reach of section 7521. As the Board correctly noted, its *original* jurisdiction granted under section 7521 does not provide it with authority to either discipline respondents, restore service areas, or require that certain staffing levels be maintained or increased; rather, it only mandates that the Board hold prior hearings to determine "good cause" as to adverse personnel actions specified in the statute. *Compare Higashi v. Department of Army*, 26 M.S.P.R. 330, 331 (1985) (MSPB possesses broad enforcement authority relating to its *appellate* jurisdiction). Therefore, the Board committed no error in determining that the relief sought by ALJs Youngblood and King was beyond its statutorily limited powers.

## CONCLUSION

Because the Board correctly determined that it did not have subject matter jurisdiction under 5 U.S.C. § 7521 to determine the propriety of actions allegedly taken by respondent, we affirm its decision dismissing their petition.

AFFIRMED.